[Cite as *Citizens Against Blasting on Our Miami v. Anderson Twp. Bd. of Zoning Appeals*, 2012-Ohio-6145.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| CITIZENS AGAINST BLASTING ON OUR MIAMI (CABOOM), | : | APPEAL NOS. C-120011 |
| | | C-120012 |
| | : | C-120013 |
| Plaintiff, | | C-120014 |
| | : | C-120015 |
| and | | TRIAL NOS. A-1006066 |
| | : | A-1006067 |
| ACUPOLL RESEARCH, INC., | | A-1006068 |
| | : | A-1006069 |
| DEBORAH BLANKENSHIP, | | A-1006189 |
| | : | |
| MICHAEL BLANKENSHIP, | | *O P I N I O N.* |
| | : | |
| BRUCE BURGER, | : | |
| CATHY BURGER, | : | |
| DAVID BURGER, | : | |
| ANNA CAREY, | : | |
| GEORGE G. CAREY, | : | |
| JAMES COOMER, | : | |
| LINDA COOMER, | : | |
| JULIANN COCHRAN, | : | |
| STEVEN COCHRAN, | : | |
| ANDREW CURRAN, | : | |
| CHRISTINE CURRAN, | : | |
| FRANK G. DISTLER, | : | |
| WANDA F. DISTLER, | | |

EUREKA RANCH PROPERTIES, INC.,

JOSEPH W. FAHRENHOLTZ,

LINDA J. FAHRENHOLTZ,

ELLEN FOLEY,

JEFFREY FRYE,

SHIRLEY FRYE,

TERRY GARVIN,

LORETTA L. GORDON,

JACK R. GORDON,

JASON GORDON,

NICOLE GORDON,

GARY GOTTENBUSCH,

PATRICIA GOTTENBUSCH,

HA HA, INC.,

HA HA II, INC.,

DEBORAH A. HALL,

DOUGLAS B. HALL,

ANNE W. HARRISON,

ROBERT S. HARRISON,

DANIEL G. HENDERSHOT,

ROBERTA HENDERSHOT,

GARY LEE HICKS,

GREGORY C. HOUNSHELL,

GAIL HOUNSHELL,

WILLARD HUGHETT,

ANITA M. HUMPHRIES, :

THOMAS M. HUMPHRIES, :

MICHAEL JOHNSTON, :

PEGGY JOHNSTON, :

LEAWANDA D. KAZEE, :

W. STANLEY KAZEE, :

JEFFREY H. NEELEY, :

PALMISANO & CO., INC., :

JUDITH A. PALMISANO, :

ROBERT L. PALMISANO, :

CATHERINE ROPAR, :

JEFFREY ROPAR, :

JEROME SCHIMPF, :

JOYCE SCHIMPF, :

HELEN M. STEELE, :

ROBERT J. STEELE, :

JUDITH WINSTEL, :

THOMAS WINSTEL, :

LYNN WOODWARD, :

CATHY Y. ZISTLER, :

JAMES A. ZISTLER, :

VILLAGE OF NEWTON, :

VILLAGE OF TERRACE PARK, :

CITY OF THE VILLAGE OF INDIAN HILL, :

WILLIAM E. HOUSER TR,            :

JERRY L. BRANDHORST,            :

DIANE C. BRANDHORST,            :

   and                          :

TERRI L. HERBERT TR,            :

       Plaintiffs-Appellees,    :

    vs.                         :

ANDERSON TOWNSHIP BOARD OF   :
ZONING APPEALS,
                                :
   and

ANDERSON TOWNSHIP BOARD OF   :
TRUSTEES,                       :

       Defendants-Appellees,    :

    and                         :

MARTIN MARIETTA MATERIALS,   :
INC.,
                                :
       Intervenor-Appellant.

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed in Part, Reversed in Part, and Cause
                            Remanded

Date of Judgment Entry on Appeal:  December 28, 2012

*Timothy G. Mara*, for Plaintiffs-Appellees Acupoll Research, Inc., Deborah Blankenship, Michael Blankenship, Diane C. Brandhorst, Jerry L. Brandhorst, Bruce Burger, Cathy Burger, David Burger, Anna Carey, George G. Carey, James Coomer, Linda Coomer, Juliann Cochran, Steven Cochran, Andrew Curran, Christine Curran, Frank G. Distler, Wanda F. Distler, Eureka Ranch Properties, Inc., Joseph W. Fahrenholtz, Linda J. Fahrenholtz, Ellen Foley, Jeffrey Frye, Shirley Frye, Terry Garvin, Loretta L. Gordon, Jack R. Gordon, Jason Gordon, Nicole Gordon, Gary Gottenbusch, Patricia Gottenbusch, Ha Ha, Inc., Ha Ha II, Inc., Deborah A. Hall, Douglas B. Hall, Anne W. Harrison, Robert S. Harrison, Daniel G. Hendershot,

4

Roberta Hendershot, Terri L. Herbert TR, Gary Lee Hicks, Gregory C. Hounshell, Gail Hounshell, William E. Houser TR, Willard Hughett, Anita M. Humphries, Thomas M. Humphries, Michael Johnston, Peggy Johnston, Leawanda D. Kazee, W. Stanley Kazee, Jeffrey H. Neeley, Palmisano & Co, Inc., Judith A. Palmisano, Robert L. Palmisano, Catherine Ropar, Jeffrey Ropar, Jerome Schimpf, Joyce Schimpf, Helen M. Steele, Robert J. Steele, Judith Winstel, Thomas Winstel, Lynn Woodward, Cathy Y. Zistler, and James A. Zistler,

*Wood & Lamping, LLP*, *Robert P. Malloy*, and *Ryan F. Coutinho*, for Plaintiffs-Appellees the City of the Village of Indian Hill, and the Village of Terrace Park,

*Donnellon, Donnellon & Miller*, and *R. Douglas Miller*, for Plaintiff-Appellee Village of Newtown,

*Gary E. Powell*, for Defendants-Appellees Anderson Township Board of Zoning Appeals and Anderson Township Board of Trustees,

*Brahm & Cunningham, LLC*, *Richard C. Brahm*, *Catherine A. Cunningham*, *Barret & Weber*, and *C. Francis Barrett* for Intervenor-Appellant Martin Marietta Materials, Inc.

Please note:  This case has been removed from the accelerated calendar.

**J. HOWARD SUNDERMANN, Presiding Judge.**

{¶1} This administrative appeal concerns a proposed mining operation on property owned by Martin Marietta Materials, Inc. ("Martin Marietta"), near the Little Miami River in Anderson Township. Martin Marietta sought, and the Anderson Township Board of Zoning Appeals ("BZA") approved, several zoning permits to allow this use. The BZA's approval, however, was conditioned in part on a "Good Neighbor Fee" to be paid annually by Martin Marietta and any future owner of the property.

{¶2} More than sixty individuals, corporations, and municipalities—including the city of the Village of Indian Hill ("Indian Hill") and the villages of Terrace Park and Newtown—appealed from the BZA's decision to the Hamilton County Court of Common Pleas under R.C. Chapter 2506. The common pleas court reversed on several grounds, and Martin Marietta now appeals to this court, raising three assignments of error. For the following reasons, we affirm in part and reverse in part.

## Background

{¶3} In 2008 Martin Marietta applied to Anderson Township officials for several zoning permits to establish a limestone mine and surface processing plant on approximately 480 acres of land in the township. The property is predominantly situated in the township's "ID" Industrial Development District ("ID District"), though a small portion is situated in the township's "B" Residence District ("B District").

{¶4} Under the Anderson Township Zoning Resolution, the "[e]xcavating, mining or processing of sand, rock and/or gravel" is permissible in the ID District as a "conditional use," meaning that "no building or premises shall be used for [such purposes] unless a special zoning certificate shall have been authorized and issued" by

the BZA. Anderson Township Zoning Resolution 114 and 114.2. Such uses are not permitted in the B District. *See* Anderson Township Zoning Resolution 62 and 78.

{¶5} In authorizing a conditional use in the ID District, the BZA must "employ the performance standards described in [Anderson Township Zoning Resolution] 116 et seq. and shall also consider the compatibility of such uses with surrounding uses and the effect of such uses upon the health, safety, and morals of the community." Anderson Township Zoning Resolution 184 and 184.7. Such uses are further subject to the general requirements of the ID District. Anderson Township Zoning Resolution 118 et seq.

{¶6} In June 2010, following extensive testimony at several public hearings, the BZA granted a conditional-use special zoning certificate, as well as other related permits, to allow the proposed mining operation on Martin Marietta's property. The BZA conditioned its approval, however, in the following manner:

> **CONDITIONS OF APPROVAL:**
>
> To ensure that there will be continued compliance with the performance standards set forth in ZR § 116 and the general requirements of ZR § 118, that the continued use of the subject property will be compatible with surrounding uses, and that the effect on health, safety, morals, and/or general welfare of the community will not be negatively impacted, the Zoning Resolution authorizes the BZA to impose conditions to its authorization of a special zoning certificate for a conditional use. Because each separate condition listed herein is interrelated to all of the other conditions and is necessary to ensure compliance with the intent and purpose

of the Zoning Resolution and the approval herein, if any one or more conditions in this resolution is challenged in court and declared invalid, void or ineffective for any reason, this entire resolution granting the application for conditional use approval shall be null and void and the matter should be remanded to the BZA for further consideration of the application in light of the invalidated condition(s).

\* \* \*

X.      The Applicant has proposed, and the Township has agreed, to enter into a "Good Neighbor Agreement" that provides the Township five (5) cents per ton of material sold and delivered from the site.  The per-ton payment to the Township under the Good Neighbor Agreement shall be indexed to the value of the U.S. Dollar in 2010. The Good Neighbor Agreement shall apply and be binding upon any subsequent owner or purchaser of the Property.  The payments under the Good Neighbor Agreement shall be made on an annual basis, on or before January 31 for the previous calendar year.

{¶7}    The BZA further resolved that any failure to comply with this and other conditions

may lead to enforcement actions by the Township to revoke the special zoning certificate for the conditional

use, or in the alternative, to enjoin the operation of the conditionally-permitted use unless such * * * conditions are complied with, and may put in jeopardy the financial investment in the site and the equipment made by [Martin Marietta], as well as the anticipated economic return on that investment.

{¶8} On appeal brought under R.C. 2506.01, the common pleas court reversed the decision of the BZA. The court reasoned that the BZA had erred in (1) allowing mining in the B District by approving mining on all of Martin Marietta's property and by classifying proposed tunnels beneath the B District as "ingress and egress" under Anderson Township Zoning Resolution 184.8-4-1, (2) allowing the storage of explosives on the property, (3) concluding that the vibration performance standard of Anderson Township Zoning Resolution 116.8 had been satisfied, (4) concluding that the nuisance performance standard of Anderson Township Zoning Resolution 116.10 had been satisfied with respect to fugitive dust, (5) concluding that the nuisance performance standard of Anderson Township Zoning Resolution 116.10 and the "health, safety, and morals" considerations of Anderson Township Zoning Resolution 184.7 had been satisfied with respect to increased truck traffic, and (6) conditioning its approval, in part, on the Good Neighbor Fee. The court further declared the BZA's decision "null and void."

{¶9} Martin Marietta now appeals to this court, assigning three errors. The company argues that the court of common pleas erred in (1) reversing the BZA's decision on the above-listed grounds except that with respect to the Good Neighbor Fee, (2) holding that the municipal appellees have standing to challenge the BZA's decision, and (3) concluding that the Good Neighbor Fee was impermissible and upon

this determination, failing to strike that condition and either allow the remainder of the BZA's decision to stand or remand the matter to the BZA for further consideration. We address the assignments of error out of order.

## Standard of Review

{¶10} In reviewing an administrative body's decision under R.C. Chapter 2506, the court of common pleas must decide whether the agency's decision was "unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record." R.C. 2506.04. Although the court must weigh the evidence, it "is bound by the nature of the administrative proceedings to presume that the decision of the administrative agency is reasonable and valid" and "should not substitute its judgment for that of the agency." *Community Concerned Citizens, Inc. v. Union Twp. Bd. of Zoning Appeals*, 66 Ohio St.3d 452, 456, 613 N.E.2d 580 (1993).

{¶11} The court of appeals, however, applies a standard of review "more *limited* in scope." (Emphasis sic.) *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 147, 735 N.E.2d 433 (2000), quoting *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34, 465 N.E.2d 848 (1984). Unlike the court of common pleas, the appellate court reviews only questions of law. R.C. 2506.04; *Hyde Park Neighborhood Council, Inc. v. Cincinnati*, 2012-Ohio-3331, 974 N.E.2d 1224, ¶ 9 (1st Dist.), citing *Henley* at 147.

## Municipal Standing

{¶12} We first address Martin Marietta's second assignment of error, which challenges the standing of Indian Hill, Terrace Park, and Newtown. "Standing determines whether a litigant is entitled to have a court determine the merits of the issues presented." *Moore v. Middletown*, 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977, ¶ 20 (internal quotation marks and citations omitted). Despite our limited

standard of review in this administrative appeal, whether a party has standing is an issue of law that we review de novo. *Dinks II Co. v. Chagrin Falls Village Council*, 8th Dist. No. 84939, 2005-Ohio-2317, ¶ 16.

{¶13} Although R.C. Chapter 2506 generally provides for judicial review of administrative determinations by political subdivisions, it "does not address the question of *who* has standing to bring such an appeal." *Willoughby Hills v. C. C. Bar's Sahara*, 64 Ohio St.3d 24, 26, 591 N.E.2d 1203 (1992); *see* R.C. 2506.01 ("Every final order * * * of any * * * board * * * of any political subdivision of the state may be reviewed by the court of common pleas * * * ."). We, therefore, turn to the common law for guidance. *See id.*; *Lofino's, Inc. v. Beavercreek*, 2d Dist. No. 2008-CA-61, 2009-Ohio-4404, ¶ 20.

{¶14} The Ohio Supreme Court has held that in order to appeal from an administrative determination under R.C. Chapter 2506, a litigant must have been "directly affected" by the order. *Schomaeker v. First Natl. Bank of Ottawa*, 66 Ohio St.2d 304, 311, 421 N.E.2d 530 (1981). In *Schomaeker*, a landowner challenged a variance concerning contiguous property by seeking a declaratory judgment. The supreme court held, however, that the landowner's action was improper because she could have appealed directly from the administrative decision. The court reasoned

> Since the order affected and determined plaintiff's rights as a property owner, and she had previously indicated her interest, both by a prior challenge to the grant of a certificate of occupancy and by her presence with counsel at the hearing on the variance, plaintiff is properly within that class of persons with standing to bring a direct appeal pursuant to R.C. Chapter 2506.

11

*Schomaeker* at 312. *See generally Driscoll v. Austintown Assocs.*, 42 Ohio St.2d 263, 328 N.E.2d 395 (1975), paragraph four of the syllabus (holding that a landowner generally must exhaust administrative remedies before commencing a declaratory-judgment action that challenges the constitutionality of a zoning restriction).

{¶15}    In *Willoughby Hills*, the supreme court later explained that

> The 'directly affected' language in *Schomaeker* merely serves to clarify the basis upon which a private property owner, as distinguished from the public at large, could challenge the board of zoning appeals' approval of the variance. The private litigant has standing to complain of harm which is unique to himself.  In contrast, a private property owner across town, who seeks reversal of the granting of a variance because of its effect on the character of the city as a whole, would lack standing because his injury does not differ from that suffered by the community at large.  The latter litigant would, therefore,  be unable to demonstrate the necessary unique prejudice which resulted from the board's approval of the requested variance.

*Willoughby Hills* at 27.

{¶16}    Since *Willoughby Hills* was decided, other appellate districts have decided whether a litigant "falls within the class of directly affected persons" by looking "beyond physical proximity to determine if the order constitutes a determination of the rights, duties, privileges, benefits or legal relationships of a specified person." *Jenkins v. Gallipolis*, 128 Ohio App.3d 376, 382, 715 N.E.2d 196 (4th Dist.1998), quoting *Am.*

*Aggregates Corp. v. Columbus*, 66 Ohio App.3d 318, 322, 584 N.E.2d 26 (10th Dist.1990). *Accord Westgate Shopping Village v. Toledo*, 93 Ohio App.3d 507, 513, 639 N.E.2d 126 (6th Dist.1994); *Bishop v. Marion Twp. Bd. of Zoning Appeals*, 3d Dist. No. 5-97-29, 1997 Ohio App. LEXIS 5579 (Dec. 10, 1997).

{¶17}  In this case, Indian Hill and Terrace Park assert different grounds for standing than Newtown.  The former contend that the proposed mine will directly affect the value of real property owned by each municipality.  Indian Hill owns an 80-acre greenbelt on a hillside overlooking Martin Marietta's property, and Terrace Park owns a 60-acre nature center in the immediate vicinity.  Moreover, during the BZA proceedings, the city manager of Indian Hill and the mayor of Terrace Park raised concerns about the effects of noise, light, dust, diesel exhaust, and vibrations from the mining operation.  Meanwhile, Newtown argues that the proposed mine will cause increased truck traffic, which will adversely impact the village's ability to maintain safe roadways as required by statute.  *See* R.C. 723.01 and 2744.02(B)(3).

{¶18}  We first examine the standing of Indian Hill and Terrace Park.  Several Ohio courts have allowed landowners to appeal from zoning decisions that lower the value of their property under R.C. Chapter 2506.  In *Jenkins*, for instance, a man alleged adequate grounds for standing to challenge a zoning decision that allowed a Wal-Mart one-half mile from his property where increased traffic would reduce the value of that property.  *Jenkins* at 382-383, following *Westgate Shopping Village* at 513-514 (holding that "evidence that the value of an appellant's property may be reduced by the enactment of a zoning ordinance will support a finding that an appellant was directly affected by the zoning ordinance.").  *Accord Anderson v. Vandalia*, 159 Ohio App.3d 508, 2005-Ohio-118, 824 N.E.2d 568, ¶ 21-24 (2d Dist.); *Raceway Video & Bookshop v. Cleveland Bd. of Zoning Appeals*, 118 Ohio App.3d 264,

272, 692 N.E.2d 656 (8th Dist.1997). We adopt this reasoning, and hold that Indian Hill and Terrace Park, given their concerns and proximity to Martin Marietta's property, have sufficiently demonstrated that they have been directly affected by the BZA's decision.

{¶19} We turn next to the standing of Newtown, which relies on our holding in *Symmes Twp. Bd. of Trustees v. Hamilton Cty. Bd. of Zoning Appeals*, 110 Ohio App.3d 527, 674 N.E.2d 1196 (1st Dist.1996). In *Symmes*, the Hamilton County Board of Zoning Appeals granted a zoning variance in Symmes Township to allow the construction of a large illuminated sign closer to the roadway than the minimum set-back otherwise required by zoning regulations. We held that the Symmes Township Board of Trustees had standing to appeal from that decision under R.C. Chapter 2506 because the variance affected the board's statutory duty to maintain safe and navigable roadways in the township. *See* R.C. 5571.02, 5571.08 and 5571.09. Newtown argues that the BZA's decision similarly impairs its statutory duty to maintain safe roadways, pointing to evidence that truck traffic will increase in the village due to the mine.

{¶20} Martin Marietta argues that *Symmes* allows political subdivisions to challenge zoning decisions only where they concern property within the political subdivision's territory, citing *D & R Properties v. Burton Twp.*, 11th Dist. No. 2003-G-2523, 2004-Ohio-6939. In *D & R*, two companies applied for various permits to build and maintain an asphalt plant in Geauga County's Burton Township. Adjacent Newbury Township sought to intervene during appellate proceedings, claiming standing "as a governmental entity with an interest in the health and safety of its residents." *Id.* at ¶ 21. The Eleventh Appellate District rejected the township's argument, holding that generalized public welfare concerns did not implicate a "particularized duty on its part which would confer a legal interest or provide

Newbury with standing to intervene * * * ." *Id.* at ¶ 24, citing *Miami Twp. Bd. of Trustees v. Miamisburg*, 2d Dist. No. 8086, 1983 Ohio App. LEXIS 14058 (May 16, 1983). The court further suggested that *Symmes* was distinguishable because the Symmes Township Board of Trustees challenged a zoning order that concerned land within Symmes Township, as opposed to a neighboring political subdivision. *Id.* at ¶ 17.

{¶21} We reject this narrow reading of *Symmes.* Indeed we believe it undermines the Ohio Supreme Court's recent refusal to "limit standing to residents of the municipality that zoned or rezoned the land" in the declaratory-judgment context. *See Moore*, 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977, at ¶ 44, following *Cresskill v. Dumont*, 15 N.J. 238, 247, 104 A.2d 441 (1954) (holding that "[a]t the very least [the municipality] owes a duty to hear any residents and taxpayers of adjoining municipalities that may be adversely affected by proposed zoning changes and to give as much consideration to their rights as they would to [its own] residents and taxpayers * * * . To do less would make a fetish out of invisible municipal boundary lines * * * .").

{¶22} We recognize that litigants may not rely on increased traffic by itself to demonstrate the unique prejudice that confers standing under R.C. Chapter 2506. *See D & R Properties* at ¶ 22; *Macedonia* at ¶ 9. But where increased traffic directly affects the "rights, duties, privileges, benefits or legal relationships" of another person or entity, including the statutory duty of municipalities to maintain safe roadways, that person or entity has standing to challenge administrative decisions causing that increase under R.C. Chapter 2506. *See Jenkins* at 383 ("Jenkins did not * * * base his claim of standing solely on increased traffic. Rather, Jenkins asserted that his property value would decrease due to an increase in traffic."); *Symmes* at 529-530. Because Newtown has established that the BZA's decision will directly affect its ability to comply

15

with a statutory duty, we hold that the municipality has standing in this case. The second assignment of error is, therefore, overruled.

## The Good Neighbor Fee

{¶23} In its third assignment of error, Martin Marietta argues that the common pleas court erred in (1) holding that the BZA exceeded its authority in conditioning its decision on the Good Neighbor Fee, and (2) in so holding, failing to strike only that provision.

{¶24} The Ohio Supreme Court has recognized that a township board of zoning appeals may grant conditional zoning certificates only insofar as they are authorized by the township's zoning resolution. *Gerzeny v. Richfield Twp.*, 62 Ohio St.2d 339, 342, 405 N.E.2d 1034 (1980). *See* R.C. 519.14(C) (empowering township boards of zoning appeals to "[g]rant conditional zoning certificates for the use of land, buildings, or other structures if such certificates for specific uses are provided for in the zoning resolution.").

{¶25} The Ninth Appellate District recently considered the extent to which a board of zoning appeals may impose conditions in *Smith v. Richfield Twp. Bd. of Zoning Appeals*, 9th Dist. No. 25575, 2012-Ohio-1175. In *Smith*, the Richfield Township Board of Zoning Appeals granted Smith a variance for a building that violated the applicable rear-setback zoning provision, but included conditions on the use of the property. The board argued that these conditions were permissible because the township's zoning resolution authorized the board to "impose such conditions as it may reasonably deem necessary to protect the public health, safety, and morals in furtherance of the purposes and intent of this Resolution." *Id.* at ¶ 14. The Ninth Appellate District held, however, that the specific conditions imposed by the board must be "provided for, and specifically authorized by a zoning resolution which was

16

adopted by the township trustees—a legislative body." *Id.* at ¶ 15, quoting *Powerall, Inc. v. Chester Twp. Trustees*, 11th Dist. No. 1037, 1983 Ohio App. LEXIS 11199, *2 (Dec. 9, 1983), citing *L & W Invest. Co. v. Cutler*, 125 Ohio St. 12, 180 N.E. 379 (1932). *Accord Genovese v. Beckham*, 9th Dist. No. 22814, 2006-Ohio-1174.

{¶26} The Anderson Township Zoning Resolution empowers the BZA to authorize "a Special Zoning Certificate for any of the Conditional Uses in the [ID District] * * * . In authorizing such Conditional Uses, the [BZA] shall employ the performance standards described in Sec. 116 et seq. and shall also consider the compatibility of such uses with the surrounding uses and the effect of such uses upon the health, safety, and morals of the community." Anderson Township Zoning Resolution 184.7.

{¶27} There are provisions of the Anderson Township Zoning Resolution that grant the BZA broad discretion in imposing conditions on certain permits. For instance, Anderson Township Zoning Resolution 184.8-8 authorizes the BZA, in granting a special zoning certificate to allow particular uses in districts in which they are prohibited, to "impose such special conditions as [the BZA] shall deem desirable under the circumstances, to reduce the adverse effect of the above uses upon the preservation of the character and development of the District in which such uses are located." In addition, Anderson Township Zoning Resolution 353 allows the BZA to impose "reasonable conditions" in allowing conditional uses authorized for single and multi-family residence districts.

{¶28} The Anderson Township Zoning Resolution does not, however, generally authorize the BZA to impose conditions when issuing zoning certificates. Nor does it authorize the BZA to impose conditions on special zoning certificates for conditional uses in the ID District. We, therefore, hold that the BZA was without

authority to condition its decision on Martin Marietta's payment of the Good Neighbor Fee.

{¶29} We, therefore, turn to what effect this error has on the disposition of this matter. The common pleas court held that the BZA's entire decision was "null and void." Martin Marietta, however, asks that we merely strike the Good Neighbor Fee and uphold the remainder of the BZA's approval. We hold, however, that the common pleas court's disposition was not supported by the law, and that Martin Marietta's alternative is untenable.

{¶30} "The effect of determining that a judgment is void is well established. It is as though such proceedings had never occurred; the judgment is a mere nullity * * * and the parties are in the same position as if there had been no judgment." *Romito v. Maxwell*, 10 Ohio St.2d 266, 267, 227 N.E.2d 223 (1967). Ohio courts have considered judgments void only in very limited circumstances. *See, e.g., Ohio Pryo, Inc. v. Ohio Dept. of Commerce*, 115 Ohio St.3d 375, 2007-Ohio-5024, 875 N.E.2d 550, ¶ 23 ("When a judgment was issued without jurisdiction or was procured by fraud, it is void and is subject to collateral attack."); *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, ¶ 8 (identifying the "narrow, and imperative" rule that "a sentence that is not in accordance with statutorily mandated terms is void").

{¶31} In this case, the Anderson Township Board of Zoning Appeals imposed a condition on its decision to allow a conditional-use special zoning certificate and related permits that was not authorized by the Anderson Township Zoning Resolution. Although this was certainly error, we cannot say that this infirmity is on par with a jurisdictional defect or a sentence imposed without statutory authority. We, therefore, hold that the common pleas court erred in concluding that the BZA's decision was void. Instead, it was merely error reversible on direct appeal.

{¶32} We further decline to remedy this situation, as Martin Marietta proposes, by simply striking the Good Neighbor Fee and issuing zoning permits ourselves. In this complex administrative matter, we find it more appropriate to allow the BZA to decide in the first instance whether to grant the zoning permits requested by Martin Marietta without this condition. The third assignment of error is, therefore, sustained in part and overruled in part.

### Conclusion

{¶33} Because our disposition of the third assignment of error requires further consideration of this matter by the BZA, we need not address the first assignment of error, which challenges the common pleas court's decision to reverse the BZA's decision on several grounds other than the unauthorized imposition of the Good Neighbor Fee.

{¶34} The judgment of the common pleas court is, therefore, affirmed with respect to its holdings that the municipal parties have standing, and that the BZA exceeded its authority in conditioning its decision on the Good Neighbor Fee. The judgment is reversed, however, with respect to the court's holding that the BZA's decision is null and void. We remand this cause to the common pleas court with instructions to remand this matter to the BZA for further proceedings in light of this opinion. Finally, we stress that this opinion, which turns on very discrete aspects of the common pleas court's judgment, shall not be construed as broader approval of the court's other holdings.

Judgment accordingly.

HENDON, J., concurs.
CUNNINGHAM, J., concurs in part and dissents in part.

**CUNNINGHAM, J.,** concurring in part and dissenting in part.

{¶35} Although I concur with nearly all of the majority's opinion, I respectfully dissent in one limited part.

{¶36} In its second assignment of error, Martin Marietta argues that the nearby municipalities of Newtown, Terrace Park, and Indian Hill lack standing to challenge the BZA's decision. The majority correctly holds that this issue turns on whether the BZA's decision "constitutes a determination of [the municipalities'] rights, duties, privileges, benefits or legal relationships." *See Jenkins v. Gallipolis*, 128 Ohio App.3d 376, 382, 715 N.E.2d 196 (4th Dist.1998). Although I agree with the majority's articulation of the law, as well as its application with respect to Newtown and Terrace Park, I cannot say that Indian Hill has established its right to participate in these proceedings.

{¶37} Indian Hill argues that the BZA's decision directly affects the city's real property interests in 80 acres of land near the proposed mining site and its ability to provide police and fire protection and safe and navigable roadways as required by statute. Although these interests may be adequate grounds for standing, there is insufficient evidence in our record to support these arguments.

{¶38} Indian Hill cites only the testimony of its city manager, Michael Burns. Although Burns mentioned that Indian Hill owns 80 acres of land near Martin Marietta's property, he did not indicate how the property is used or how the mining operation would directly affect it. When asked to clarify the city's concerns, Burns stated:

> The main concerns that were raised during the process
> have been talked about previously. We had a concern
> about noise, we had a concern about the lighting plan

20

especially because they were very bright lights shown on the site plan for this site that shine up into the air as opposed to down. They are lighting up the process operations and those same lights would shine up into the homes on the ridge above in Indian Hill. Third, the dust control was a concern that was immediate [sic] apparent to us.

And, then finally, to a little bit more limited fashion, the traffic, the truck traffic was a concern. We do have regulations in place that prohibit through truck traffic but, those are regularly disobeyed and it causes some unfortunate issues but, generally we feel we could control most of the trucks that might find their way through Indian Hill.

{¶39} Also during his testimony, Indian Hill submitted and the BZA accepted as evidence, a letter that had been sent to the BZA and signed by Burns that opposed the proposed mining operation. The letter complained about the potential effects of noise, light, dust, and truck traffic, but only with respect to the city's residents—not any right, duty, privilege, benefit, or legal relationship unique to the municipality. In fact, the letter fails to refer to any city property at all. Nor does the letter raise any foreseeable impact on the city's ability to provide police and fire services. With respect to traffic, the letter states that even though truck traffic will increase due to the mining operation, it concludes that "[v]ery little or none of this traffic will find its way to Indian Hill streets * * * but nearby major thoroughfares and primary roads will be negatively impacted by the increased truck traffic."

{¶40} There is, therefore, no evidence in the administrative record to demonstrate how the proposed mining operation would directly affect any statutory duty of Indian Hill. Moreover, even though Burns testified that the Indian Hill owns property in the general vicinity of Martin Marietta's property, no evidence indicates how this property would be affected by the mining operation. By contrast, Jay Gohman, the mayor of Terrace Park, testified that his village owns property near the site that is zoned "residential" and could be sold in the future. Gohman expressed concern that dust, noise, diesel exhaust, and vibrations emanating from the mining operation would reduce the value of the village's property. Although this evidence is somewhat speculative, I believe it was adequate grounds to establish Terrace Park's right to participate in these proceedings. *See Jenkins*, 128 Ohio App.3d at 383, 715 N.E.2d 196; *Westgate Shopping Village v. Toledo*, 93 Ohio App.3d 507, 514, 639 N.E.2d 126 (6th Dist.1994). Indian Hill, however, was clearly concerned only with the impact of the mining operation upon its residents. Understandable as this may be, such generalized concerns are not enough to implicate "rights, duties, privileges, benefits or legal relationships" of the city.

{¶41} Accordingly, I would sustain Martin Marietta's second assignment of error with respect to the standing of Indian Hill. I join the majority's opinion, however, in all other respects.

Please note:
 The court has recorded its own entry this date.

22