[Cite as *Lupo v. Columbus*, 2014-Ohio-2792.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Marian E. Lupo, | : | |
| Appellant-Appellant, | : | |
| | : | No. 13AP-1063 |
| v. | : | (C.P.C. No. 13CVF-05-5909) |
| City of Columbus, Board of Zoning Adjustment et al., | : | (ACCELERATED CALENDAR) |
| | : | |
| Appellees-Appellees. | : | |
| | : | |

D E C I S I O N

Rendered on June 26, 2014

*Marian E. Lupo*, pro se.

*Richard C. Pfeiffer, Jr.*, City Attorney, and *Westley M. Phillips*, for appellee City of Columbus, Board of Zoning Adjustment.

*Isaac Wiles Burkholder & Teetor LLC*, and *Aaron M. Glasgow*, for appellee.

APPEAL from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Appellant-appellant, Marian E. Lupo, appeals a judgment of the Franklin County Court of Common Pleas dismissing Lupo's appeal of an order of appellee-appellee, City of Columbus, Board of Zoning Adjustment ("BZA"). For the following reasons, we reverse and remand that judgment.

{¶ 2} On February 25, 2013, appellee-appellee, 4 Points Development, Inc. ("Four Points"), requested from the BZA three variances from the requirements of the city's

zoning code.  Four Points plans to build a Family Dollar store at 2395 West Broad Street, which is located in the Hilltop neighborhood of Columbus.  Due to the size of the lot and the desired configuration of the store, Four Points applied for variances to:  (1) reduce the required number of parking spaces from 21 to 17, (2) locate the parking lot on the side of the principal building instead of behind the principal building, and (3) construct a building that is 57 percent—not the required 60 percent—of the lot width.

{¶ 3}   The BZA held a hearing on Four Points' variance application on April 23, 2013.  Lupo appeared and testified at the hearing.  Lupo represented to the BZA that she lived approximately 400 feet from 2395 West Broad Street, the site of the proposed development. Lupo primarily objected to the variances because she believed that Four Points had not given the Hilltop community enough opportunity to express concerns about, and opposition to, the proposed development.  Lupo also contended that proposed development would create a hazard to pedestrians and increase the traffic and noise in the neighborhood.

{¶ 4}   At the conclusion of the hearing, the BZA orally voted to approve the requested variances.   On May 1, 2013, a Department of Development staff member certified the written order, entitled "Board Order," that approved the requested variances.

{¶ 5}   Lupo appealed the BZA's order to the trial court on May 29, 2013.  After filing a copy of the administrative record with the trial court, the BZA moved to dismiss the appeal.  The BZA argued that the trial court lacked subject-matter jurisdiction over the appeal, and that Lupo lacked standing to assert the appeal.  Lupo responded to that motion and attached an affidavit, wherein she testified that the BZA's order would cause increased traffic and deny her ingress to her property.  Lupo claimed she had standing because those two adverse effects would diminish her property value.

{¶ 6}   While the motion to dismiss was pending, Lupo filed a motion for an evidentiary hearing to supplement the administrative record.  Lupo supported her motion with an affidavit, in which she testified that: (1) the BZA's three-minute time limit for testimony did not permit her to present all of her arguments; (2) she was not permitted to offer, examine, and cross-examine witnesses at the BZA hearing; (3) she was not permitted to offer evidence to refute evidence and testimony offered at the BZA hearing to oppose her arguments; (4) she was unable to present evidence by reason of BZA's inability

to subpoena witnesses and evidence; and (5) the BZA failed to submit to the trial court conclusions of fact supporting its order. Lupo argued that, under R.C. 2606.03, these deficiencies entitled her to submit additional evidence. If allowed the opportunity to do so, Lupo planned to submit testimony from an expert witness that her property value would decrease as a result of the BZA's order.

{¶ 7} In a judgment dated December 2, 2013, the trial court granted the BZA's motion to dismiss on the basis that Lupo lacked standing to pursue the appeal. The trial court did not address the BZA's argument that the court lacked subject-matter jurisdiction over the appeal, nor did the trial court rule on Lupo's motion for an evidentiary hearing.

{¶ 8} Lupo now appeals from the December 2, 2013 judgment, and she assigns the following errors:

> I. THE TRIAL COURT ERRED IN GRANTING THE CIV.R. 12(B)(6) MOTION IN FAVOR OF APPELLEE AS THE TRIAL COURT APPLIED THE IMPROPER STANDARD OF REVIEW ON A CIV.R.12(B)(6) [sic] MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.
>
> II. THE TRIAL COURT ERRED IN GRANTING THE CIV.R. 12(B)(6) MOTION IN FAVOR OF APPELLEE AS THE TRIAL COURT IMPROPERLY CONVERTED THE CIV.R. 12(B)(6) MOTION TO A CIV.R. 56 MOTION BY RELYING ON STATEMENTS OUTSIDE THE PLEADINGS.
>
> III. THE TRIAL COURT ERRED IN GRANTING THE CIV.R. 12(B)(6) MOTION IN FAVOR OF APPELLEE AS THE TRIAL COURT IMPROPERLY CONVERTED THE CIV.R. 12(B)(6) MOTION TO A CIV.R. 56 MOTION WITHOUT PROVIDING THE REQUIRED CIV.R. 56(C) NOTICE OF CONVERSION.
>
> IV. THE TRIAL [sic] THE TRIAL COURT ERRED IN GRANTING THE CIV.R. 12(B)(6) MOTION IN FAVOR OF APPELLEE AS THE TRIAL COURT IMPROPERLY CONVERTED THE CIV.R. 12(B)(6) MOTION TO A CIV.R. 56 MOTION AND APPLIED THE INCORRECT STANDARD OF REVIEW.
>
> V. THE TRIAL COURT ERRED IN FAILING TO PROVIDE THE EVIDENTIARY HEARING REQUESTED BY APPELLANT PURSUANT TO O.R.C. § 2506.03(A).

{¶ 9}   Before considering Lupo's assignments of error, we must address Four Points' argument that the trial court lacked subject-matter jurisdiction over Lupo's appeal.  " 'Subject-matter jurisdiction of a court connotes the power to hear and decide a case upon its merits' and 'defines the competency of a court to render a valid judgment in a particular action.' "  *Cheap Escape Co. v. Haddox, L.L.C.*, 120 Ohio St.3d 493, 2008-Ohio-6323, ¶ 6, quoting *Morrison v. Steiner*, 32 Ohio St.2d 86, 87 (1972).  Because a court without subject-matter jurisdiction lacks the power to adjudicate the merits of a case, parties may challenge jurisdiction at any time during the proceedings.  *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, ¶ 11.  Whether a trial court possessed subject-matter jurisdiction is a question of law, which we consider de novo.  *John Roberts Mgt. Co. v. Obetz*, 188 Ohio App.3d 362, 2010-Ohio-3382, ¶ 8 (10th Dist.).

{¶ 10} Article IV, Section 4(B) of the Ohio Constitution provides, "The courts of common pleas * * * shall have * * * such powers of review of proceedings of administrative officers and agencies as may be provided by law."  Pursuant to this authority, the General Assembly enacted R.C. 2506.01, which permits parties to appeal the final orders, adjudications, and decisions of political subdivisions that result from a quasi-judicial proceeding in which notice, a hearing, and the opportunity for the introduction of evidence have been given.  *AT&T Communications of Ohio, Inc. v. Lynch*, 132 Ohio St.3d 92, 2012-Ohio-1975, ¶ 8.  R.C. 2506.01(A) states:

> Except as otherwise provided in sections 2506.05 to 2506.08 of the Revised Code, and except as modified by this section and sections 2506.02 to 2506.04 of the Revised Code, every final order, adjudication, or decision of any officer, tribunal, authority, board, bureau, commission, department, or other division of any political subdivision of the state may be reviewed by the court of common pleas of the county in which the principal office of the political subdivision is located as provided in Chapter 2505. of the Revised Code.

As used in R.C. 2506.01(A), "final order, adjudication, or decision" means "an order, adjudication, or decision that determines rights, duties, privileges, benefits, or legal relationships of a person."  R.C. 2506.01(C).

{¶ 11} Here, no party disputes that the BZA is an agency of the city of Columbus, which is a political subdivision of the state.  Additionally, all parties agree there is a final

order of the BZA that granted zoning variances to Four Points. Based on these undisputed facts, we conclude that R.C. 2506.01 allowed appeal of the BZA's final order.

{¶ 12} Even if R.C. 2506.01 provides a right to appeal, a common pleas court does not acquire subject-matter jurisdiction over the appeal unless and until the appeal is perfected. *Lynch* at ¶ 17. When a statute confers the right to appeal, an appeal can be perfected only in the manner prescribed by the applicable statute. *Welsh Dev. Co., Inc. v. Warren Cty. Regional Planning Comm.*, 128 Ohio St.3d 471, 2011-Ohio-1604, ¶ 14. Where a party appeals pursuant to R.C. 2506.01, R.C. 2505.04 and 2505.07 govern the manner in which the party must perfect the appeal. According to R.C. 2505.04, administrative appeals are "perfected when a written notice of appeal is filed * * * with the administrative officer, agency, board, department, tribunal, commission, or other instrumentality involved." R.C. 2505.07 prescribes the time period for perfecting an appeal and provides, "After the entry of a final order of an administrative officer, agency, board, department, tribunal, commission, or other instrumentality, the period of time within which the appeal shall be perfected, unless otherwise provided by law, is thirty days." Failure to file a written notice of appeal with the instrumentality involved within 30 days of the entry of a final order deprives a common pleas court of subject-matter jurisdiction over the appeal.

{¶ 13} Here, Four Points argues that the trial court lacked jurisdiction because Lupo did not file her appeal within 30 days of the oral vote taken on April 23, 2013. Four Points contends that the BZA's oral vote was a "final action" that triggered the 30-day appeal period.

{¶ 14} As we stated above, R.C. 2506.01 authorizes an appeal to a common pleas court from every "final order, adjudication, or decision" of an administrative agency of a political subdivision. The 30-day period in which to file that appeal begins when an administrative agency enters a final order, adjudication, or decision. R.C. 2505.07. Here, although the BZA orally voted to approve the variances on April 23, 2013, the document designated as the "Board Order" was not certified until May 1, 2013. The issuance of that written order triggered the running of the appeal time. *McGath v. Hamilton Local School Dist.*, 10th Dist. No. 10AP-340, 2010-Ohio-5445, ¶ 14-16. Lupo, therefore, had 30 days from May 1, 2013—a period which ended May 31, 2013—to perfect her appeal.

{¶ 15} To succeed in perfecting her appeal, Lupo had to file a written notice of appeal with the BZA. R.C. 2505.04. Filing occurs when an appellant actually and timely delivers the written notice of appeal to the correct tribunal. *Welsh Dev. Co.* at ¶ 38. An appellant "may use any method reasonably certain to accomplish delivery to the agency within the required 30 days, which is filing that satisfies the jurisdictional requirement for an administrative appeal." *Id.* at ¶ 40.

{¶ 16} Here, Lupo adduced affidavit testimony establishing that she personally delivered a copy of her notice of appeal to the clerk at the front desk of the BZA on May 31, 2013. Appellees do not dispute this fact. Consequently, we conclude that Lupo timely perfected her appeal. The trial court, therefore, had subject-matter jurisdiction over Lupo's appeal.

{¶ 17} We now turn to Lupo's assignments of error. Because they are interrelated, we will address Lupo's first through fourth assignments of error together. By these assignments of error, Lupo argues that the trial court failed to properly apply Civ.R. 12(B)(6) when deciding the motion to dismiss. As Civ.R. 12(B)(6) does not pertain to R.C. 2506.01(A) appeals, we find no such error.

{¶ 18} The Ohio Rules of Civil Procedure, "to the extent that they would by their nature be clearly inapplicable, shall not apply to procedure (1) upon appeal to review any judgment, order or ruling." Civ.R. 1(C). As a general matter, Civ.R. 12(B)(6) permits a defendant to file a motion to dismiss asserting the defense that the plaintiff has failed to state a claim upon which relief can be granted. "[S]uch a motion has no place in an appeal." *State ex rel. Soley v. Dorrell*, 69 Ohio St.3d 514, 515 (1994). Appellate proceedings do not commence with a claim, so an appellant's failure to state a claim is not a basis for dismissal of an appeal. When a common pleas court adjudicates an R.C. 2506.01 appeal, it " ' performs an appellate function.' " *Lynch*, 132 Ohio St.3d 92, 2012-Ohio-1975, at ¶ 15, quoting *Dvorak v. Athens Mun. Civ. Serv. Comm.*, 46 Ohio St.2d 99, 103 (1976). Civ.R. 12(B)(6), therefore, is clearly inapplicable in R.C. 2506.01 appeals. *Horner v. Bd. of Washington Twp. Trustees*, 12th Dist. No. CA2011-02-008, 2011-Ohio-5871, ¶ 29.

{¶ 19} The inapplicability of Civ.R. 12(B)(6) to R.C. 2506.01 appeals does not preclude an appellee from moving for dismissal, or the trial court from granting such a

motion, on the ground that the appellant lacks standing. Civ.R. 7(B)(1) permits parties to make motions seeking court orders. Such a motion must state with particularity the grounds for the motion and set forth the relief or order sought. *Id.* Unlike Civ.R. 12(B)(6), Civ.R. 7(B)(1) is not, by its nature, clearly inapplicable to appellate proceedings. The Ohio Rules of Appellate Procedure include App.R. 15—a rule similar to Civ.R. 7(B)(1)—that allows the filing of motions.

{¶ 20} Furthermore, trial courts have inherent authority to manage their own dockets and the cases before them. *State ex rel. Charvat v. Frye*, 114 Ohio St.3d 76, 2007-Ohio-2882, ¶ 23; *Flynn v. Flynn*, 10th Dist. No. 03AP-612, 2004-Ohio-3881, ¶ 10. Trial courts, therefore, possess the innate ability to rule on a motion to dismiss for lack of standing. Thus, Civ.R. 7(B)(1) enabled the BZA to file its motion to dismiss, and the trial court's inherent power supplied the court with the authority to entertain and rule on that motion.

{¶ 21} Neither the BZA's motion nor the trial court's decision relied on Civ.R. 12(B)(6). The trial court, therefore, did not err by eschewing the Civ.R. 12(B)(6) standard and the procedural requirements for converting a Civ.R. 12(B)(6) motion to a summary judgment motion. Accordingly, we overrule Lupo's first through fourth assignments of error.

{¶ 22} By her fifth assignment of error, Lupo argues that the trial court erred in failing to provide her with an evidentiary hearing pursuant to R.C. 2506.03(A). We agree.

{¶ 23} The trial court granted the BZA's motion to dismiss without ruling on Lupo's motion for an evidentiary hearing. Ordinarily, when a trial court decides a case without expressly ruling on a pending motion, an appellate court will presume that the trial court denied the motion. *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, ¶ 13; *Burkhart v. Burkhart*, 191 Ohio App.3d 169, 2010-Ohio-5363, ¶ 30 (10th Dist.). We, therefore, will presume that the trial court denied Lupo's motion and address whether that denial constituted reversible error.

{¶ 24} In R.C. 2506.01 appeals, "the officer or body from which the appeal is taken * * * shall prepare and file in the court to which the appeal is taken [ ] a complete transcript of all the original papers, testimony, and evidence offered, heard, and taken into consideration in issuing the final order, adjudication, or decision." R.C. 2506.02.

Generally, a common pleas court is confined to that administrative record. R.C. 2506.03(A). However, the court may admit and consider new evidence if the appellant establishes that one of the following applies:

> (1) The transcript does not contain a report of all evidence admitted or proffered by the appellant.
>
> (2) The appellant was not permitted to appear and be heard in person, or by the appellant's attorney, in opposition to the final order, adjudication, or decision, and to do any of the following:
>
> (a) Present the appellant's position, arguments, and contentions;
>
> (b) Offer and examine witnesses and present evidence in support;
>
> (c) Cross-examine witnesses purporting to refute the appellant's position, arguments, and contentions;
>
> (d) Offer evidence to refute evidence and testimony offered in opposition to the appellant's position, arguments, and contentions;
>
> (e) Proffer any such evidence into the record, if the admission of it is denied by the officer or body appealed from.
>
> (3) The testimony adduced was not given under oath.
>
> (4) The appellant was unable to present evidence by reason of a lack of the power of subpoena by the officer or body appealed from, or the refusal, after request, of that officer or body to afford the appellant opportunity to use the power of subpoena when possessed by the officer or body.
>
> (5) The officer or body failed to file with the transcript conclusions of fact supporting the final order, adjudication, or decision.

R.C. 2506.03(A)(1) to (5). Even if an exception is applicable, the moving party is not entitled to a de novo hearing; instead, the purpose of R.C. 2506.03 is to allow a common pleas court to "fill in the gaps" in the administrative record. *Hirsi v. Franklin Cty. Dept.*

*of Job & Family Servs.*, 10th Dist. No. 13AP-39, 2014-Ohio-1804, ¶ 44; *Moody v. Westerville City School Dist. Bd. of Edn.*, 10th Dist. No. 07AP-551, 2008-Ohio-591, ¶ 14.

{¶ 25} Here, Lupo sought a hearing, in part, because she recognized that she could not establish her standing to appeal with the evidence in the administrative record. In deciding a standing issue, a court resolves " 'whether a litigant is entitled to have a court determine the merits of the issues presented.' " *State ex rel. Teamsters Local Union No. 436 v. Bd. of Cty. Commrs.*, 132 Ohio St.3d 47, 2012-Ohio-1861, ¶ 10, quoting *Ohio Contrs. Assn. v. Bicking*, 71 Ohio St.3d 318, 320 (1994). While R.C. Chapter 2505 specifies the method for perfecting an R.C. 2506.01 appeal, neither it nor R.C. Chapter 2506 explicitly "address[es] the question of *who* has standing to bring" a R.C. 2506.01 appeal. (Emphasis sic.) *Willoughby Hills v. C. C. Bar's Sahara, Inc.*, 64 Ohio St.3d 24, 26 (1992). Thus, we must examine precedent from the Supreme Court of Ohio to answer that question.

{¶ 26} In *Roper v. Bd. of Zoning Appeals*, 173 Ohio St. 168 (1962), the Supreme Court first addressed whether a person other than an applicant for a zoning change had standing to appeal an administrative zoning order. The court found it "contrary to the intention of the Legislature" to limit standing to an applicant only. *Id.* at 173. The court held that:

> [a] resident, elector and property owner of a township, who appears before a township Board of Zoning Appeals, is represented by an attorney, opposes and protests the changing of a zoned area from residential to commercial, and advises the board, on the record, that if the decision of the board is adverse to him he intends to appeal from the decision to a court, has a right of appeal to the Common Pleas Court if the appeal is properly and timely made pursuant to Sections 519.15 and 2506.01 to 2506.04, inclusive, and Chapter 2505, Revised Code.

*Id.* at syllabus.

{¶ 27} The Supreme Court next considered the issue of third-party standing in *Schomaeker v. First Natl. Bank*, 66 Ohio St.2d 304, 311-12 (1981), where it limited standing to appeal under R.C. 2506.01 to those "directly affected" by an administrative decision. The court found that:

> [a] person owning property contiguous to the proposed use who has previously indicated an interest in the matter by a prior court action challenging the use, and who attends a hearing on the variance together with counsel, is within that class of persons directly affected by the administrative decision and is entitled to appeal under R.C. Chapter 2506.

*Id.* at paragraph two of the syllabus.

{¶ 28} In *Willoughby Hills*, the Supreme Court summarized its prior holdings, stating that "[a]jacent or contiguous property owners who oppose and participate in the administrative proceedings concerning the issuance of a variance" have standing to seek appellate review under R.C. 2506.01. *Id.* at 26. The Supreme Court also clarified what it meant by the "directly affected" language it used in *Schomaeker*. It explained:

> The private litigant has standing to complain of harm which is unique to himself. In contrast, a private property owner across town, who seeks reversal of the granting of a variance because of its effect on the character of the city as a whole, would lack standing because his injury does not differ from that suffered by the community at large. The latter litigant would, therefore, be unable to demonstrate the necessary unique prejudice which resulted from the board's approval of the requested variance.

*Willoughby Hills* at 27.

{¶ 29} The synthesis of these cases results in the conclusion that a third-party property owner has standing to appeal an administrative zoning order under R.C. 2506.01 when that property owner: (1) has opposed the proposed zoning change through active participation at the administrative hearing and (2) has been directly affected by the administrative zoning order. *Safest Neighborhood Assn. v. Athens Bd. of Zoning Appeals*, 4th Dist. No. 12CA32, 2013-Ohio-5610, ¶ 24. We reject Four Points' contention that an appellant must also announce at the administrative hearing his or her intention to appeal an adverse decision. Although the appellant in *Roper* took that action, neither *Schomaeker* nor *Willoughby Hills* included voicing one's intention to appeal as a requirement for standing. *See Safest Neighborhood Assn.* at ¶ 30 ("[W]e do not read the Court's statement in *Roper* as an exhaustive list of requirements that a third party must meet to have standing to appeal an administrative agency's decision. Rather, we view this

statement as descriptive of Roper's actions in that case, not prescriptive as [the appellant] contends.").

{¶ 30} As articulated in *Willoughby Hills*, an administrative order directly affects a party when that party can demonstrate a unique injury caused by the administrative order. *Id.* at 27. Generally, concerns about increased traffic are shared equally by the public at large, and, consequently, such concerns do not engender a unique harm that establishes standing. *Kurtock v. Cleveland Bd. of Zoning Appeals*, 8th Dist. No. 100266, 2014-Ohio-1836, ¶ 11; *Safest Neighborhood Assn.* at ¶ 26; *Groffre Invests. v. Canton Bd. of Zoning Appeals*, 5th Dist. No. 2012-CA-00091, 2013-Ohio-1227, ¶ 21; *Citizens Against Blasting on Our Miami v. Anderson Twp. Bd. of Zoning Appeals*, 1st Dist. No. C-120011, 2012-Ohio-6145, ¶ 22. On the other hand, evidence that an appellant's property value may decrease due to an administrative decision demonstrates a direct effect sufficient to confer standing. *Kurtock* at ¶ 11; *Safest Neighborhood Assn.* at ¶ 26; *Groffre Invests.* at ¶ 21; *Citizens Against Blasting on Our Miami* at ¶ 18; *Westgate Shopping Village v. Toledo*, 93 Ohio App.3d 507, 514 (6th Dist.1994).

{¶ 31} Here, the administrative record demonstrates that Lupo expressed her opposition to the variances sought by Four Points during the BZA hearing. Lupo, therefore, established the first element necessary to prove standing. However, beyond Lupo's testimony that she owns property located 400 feet from the site of the proposed development, the administrative record contains no evidence relevant to whether the BZA's order will directly affect Lupo.[1] Recognizing this gap in the evidence, Lupo tried to correct it through an affidavit in which she alleged that the variances granted in the BZA's order will cause traffic changes and deny her ingress to her property, which will, in turn, diminish her property value.

{¶ 32} In addition to submitting her affidavit testimony, Lupo moved for an evidentiary hearing pursuant to R.C. 2606.03. Lupo identified multiple shortcomings in

---

[1] Appellees contest Lupo's representation that she lives 400 feet from the proposed development. The BZA alleges that Lupo's property is approximately 2,250 feet from the development site. Four Points calculates the distance at .42 miles, which converts to 2,217.6 feet. Neither the BZA nor Four Points has adduced any evidence to support these figures. At oral argument, Lupo told this court that her property is 1,600 feet from 2395 West Broad Street. Our purview does not include deciding factual disputes in the first instance. Consequently, we decline to determine the distance between Lupo's property and the proposed development.

the administrative hearing, including those specified in R.C. 2606.03(A)(2)(b), (c), and (d). If granted an opportunity to present supplemental evidence, Lupo stated that she planned to submit expert testimony showing a decrease in her property value due to the BZA's order.

{¶ 33} In granting the motion to dismiss, the trial court criticized Lupo for failing to present any evidence of a unique harm at the BZA hearing. Although the trial court discussed the allegations of diminution of property value that appeared in Lupo's affidavit, it rejected them as evidence establishing Lupo's standing. The reason for that rejection is unclear. To the extent that the trial court found that a decrease in property value is not a unique injury that confers standing, the trial court erred. As we discussed above, a diminution in property value is a direct adverse effect that, together with active opposition at an administrative hearing, creates standing. Alternatively, the trial court could have found Lupo's affidavit testimony insufficient or not credible. That finding is problematic because the trial court effectively denied Lupo the opportunity to strengthen the evidence that the value of her property will decrease.

{¶ 34} In *American Aggregates Corp. v. Columbus*, 66 Ohio App.3d 318 (10th Dist.1990), we faced a scenario similar to that presented by this appeal. There, a third-party property owner sought to appeal an administrative order granting a zoning variance under R.C. 2506.01. The trial court granted the appellees' motions to dismiss the appeal on the basis that the appellant lacked standing. The appellant had moved to present supplemental evidence pursuant to R.C. 2606.03, but the trial court did not rule on that motion.

{¶ 35} On appeal, the appellant argued that it had standing because it had property and contractual rights that the zoning variance adversely affected. The appellees contended that neither the trial court nor this court could consider that argument because the administrative record contained no evidence to support it. After reviewing the administrative record, we concluded that a deficiency in the administrative hearing entitled the appellant to an evidentiary hearing under R.C. 2606.03. Consequently, we held that "it was error to dismiss appellant's appeal for lack of standing without granting appellant's motion to present additional evidence." *Id.* at 323.

{¶ 36} Like the administrative record in *American Aggregates Corp.*, the administrative record here shows at least one deficiency identified in R.C. 2606.03; namely, Lupo lacked the opportunity to offer and examine witnesses at the BZA hearing. Lupo has proffered that, if provided an evidentiary hearing, she would supplement the record with expert testimony establishing the facts necessary to prove her allegations of a unique injury due to the devaluation of her property. Applying *American Aggregates Corp.*, we conclude that the trial court erred by dismissing Lupo's appeal for lack of standing without giving her an opportunity to present that evidence.[2] Accordingly, we sustain Lupo's fifth assignment of error.

{¶ 37} For the foregoing reasons, we overrule Lupo's first, second, third, and fourth assignments of error, and we sustain Lupo's fifth assignment of error. We reverse the judgment of the Franklin County Court of Common Pleas, and we remand this matter to that court so that Lupo may present expert testimony showing a diminution in the value of her property as a consequence of the BZA's order.

*Judgment reversed; cause remanded with instructions.*

**CONNOR and LUPER SCHUSTER, JJ., concur.**

———————————

[2] In her motion for a hearing, Lupo also sought to introduce evidence on the merits of her appeal. Our finding of error implicates only the standing question. Therefore, on remand, the hearing should focus solely on standing.