OPINIONS OF THE SUPREME COURT OF OHIO
      The full texts of the opinions of the Supreme Court of Ohio
are being transmitted electronically beginning May 27, 1992,
pursuant to a pilot project implemented by Chief Justice Thomas
J. Moyer.
      Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Justine Michael, Administrative Assistant.
Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.  Your comments on this
pilot project are also welcome.
      NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised to
check the bound volumes of Ohio St.3d published by West Publishing
Company for the final versions of these opinions.  The advance
sheets to Ohio St.3d will also contain the volume and page
numbers where the opinions will be found in the bound volumes of
the Ohio Official Reports.

City of Willoughby Hills, Appellant, v. C. C. Bar's Sahara, Inc., Appellee.

[Cite as Willoughby Hills v. C. C. Bar's Sahara, Inc. (1992),    Ohio St.3d    .]

Municipal corporations -- Charter allows municipality to seek appellate review of determinations made by its board of zoning appeals -- Municipality has standing pursuant to R.C. 2506.01 to "attack or void" such decisions in the common pleas court.

Where a municipality's charter or its ordinances expressly allow the municipality to seek appellate review of determinations made by its board of zoning appeals, the municipality has standing pursuant to R.C. 2506.01 to "attack or avoid" such decisions in the common pleas court. (State, ex rel. Broadway Petroleum Corp., v. Elyria [1969], 18 Ohio St.2d 23, 32, 47 O.O.2d 149, 154, 247 N.E.2d 471, 477, approved and followed; Kasper v. Coury [1990], 51 Ohio St.3d 185, 555 N.E.2d 310, paragraph two of the syllabus, distinguished.)

(Nos. 91-416 and 91-887 -- Submitted January 22, 1992 -- Decided June 17, 1992.)

Appeal from and Certified by the Court of Appeals for Lake County, No. 90-L-14-048.

Defendant-appellee, C. C. Bar's Sahara, Inc. ("Bar's Sahara"), is a restaurant located in the city of Willoughby Hills ("city"), plaintiff-appellant, a chartered municipality. Appellee's operation of the premises for restaurant purposes is a nonconforming use pursuant to the city's codified ordinances. In July 1989, Bar's Sahara applied to the Board of Building and Zoning Appeals of the city of Willoughby Hills, seeking a variance to expand the nonconforming use by one hundred forty-seven percent, an amount greater than otherwise permitted by zoning ordinances. Appellee justified the requested variance, which called for a roofed enclosure of the space occupied as a patio on the premises, as necessary to protect several palm trees contained within.

On October 24, 1989, after several hearings, the board of building and zoning appeals granted the requested variance. Willoughby Hills had not appeared at the hearings or in any way opposed Bar's Sahara's request for a variance.

On November 22, 1989, appellant filed an administrative appeal of the board's decision pursuant to R.C. 2506.01 with the Lake County Court of Common Pleas. The trial court sua sponte dismissed Willoughby Hills' administrative appeal stating that the city lacked standing to appeal a decision of its own duly appointed and authorized board of building and zoning appeals and cited in support State, ex rel. Broadway Petroleum Corp., v. Elyria (1969), 18 Ohio St.2d 23, 47 O.O.2d 149, 247 N.E.2d 471.

Upon appeal to the Eleventh District Court of Appeals, the appellate court affirmed the judgment of the court of common pleas. The appellate court held that R.C. 2506.01 does not confer standing upon appellant to attack the decision of its own board of building and zoning appeals.

Finding its decision to be in conflict with the decisions of the Eighth District Court of Appeals in Benes v. Cleveland (July 21, 1977), Cuyahoga App. No. 36441, unreported, and Division of Building & Housing v. The Positive Education Program (Oct. 3, 1985),

Cuyahoga App. No. 49393, unreported, the appellate court certified the record of the case to this court for review and final determination (case No. 91-887). The cause is also before this court pursuant to the allowance of a motion to certify the record (case No. 91-416).

Rosplock, Coulson, Perez & Deeb and Charles E. Coulson, for appellant.
Petersen, Ibold & Wantz, Jerry Petersen and David M. King, for appellee.
Calfee, Halter & Griswold, John E. Gotherman and Marilyn G. Zack, urging reversal for amicus curiae, Ohio Municipal League.

Holmes, J.   The issue certified for our review is whether a municipality has standing to file a d

irect appeal of an adverse decision of its own board of zoning appeals to the court of common pleas pursuant to R.C. 2506.01, even in the absence of a showing that the municipality was "directly affected" by the decision. We will also determine the effect, if any, a city charter may have on a city's right to appeal a decision of its own board of zoning appeals.

In the absence of constitutional or statutory authority, the aggrieved party may not seek appellate review of the order of an administrative determination as the right to appeal is neither inherent nor inalienable. See Roper v. Bd. of Zoning Appeals (1962), 173 Ohio St. 168, 173, 18 O.O.2d 437, 440, 180 N.E.2d 591, 594. While administrative appeals on the state level are governed by the Administrative Procedure Act (R.C. Chapter 119), administrative appeals at the township and municipal levels are governed by R.C. Chapter 2506. R.C. 2506.01, in relevant part, provides:

"Every final order, adjudication, or decision of any officer, tribunal, authority, board, bureau, commission, department, or other division of any political subdivision of the state may be reviewed by the court of common pleas of the county in which the principal office of the political subdivision is located as provided in Chapter 2505. of the Revised Code, except as modified by this chapter." (Emphasis added.)

R.C. Chapter 2506, while providing generally for administrative appeals from administrative determinations by political subdivisions, does not address the question of who has standing to bring such an appeal. Under the common law, it is well settled that the right to appeal can be exercised only by those parties who are able to demonstrate a present interest in the subject matter of the litigation which has been prejudiced by the judgment of the lower court. Ohio Contract Carriers Assn., Inc. v. Pub. Util. Comm. (1942), 140 Ohio St. 160, 161, 23 O.O. 369, 42 N.E.2d 758, 759. "Appeal lies only on behalf of a party aggrieved by the final order appealed from. Appeals are not allowed for the purposes of settling abstract questions, but only to correct errors injuriously affecting the appellant." Id. at syllabus.

In prior cases involving standing to appeal a board of zoning appeals' determination to the common pleas court, this court has not interpreted R.C. 2506.01 as limiting standing only to the party whose requested variance was denied. Adjacent or contiguous property owners who oppose and participate in the administrative proceedings concerning the issuance of a variance are equally entitled to seek appellate review under R.C. 2506.01. See Roper, supra, at syllabus.1 "The Legislature, in our opinion, recognized the need for an opportunity for review of the decisions of administrative agencies and broadened the right of review to include 'every final order, adjudication, or decision of any *** board *** of any political subdivision of the state.'" Roper, supra, at 173, 18 O.O. 2d at 440, 180 N.E.2d at 595.

The court of appeals, in the case sub judice, limited the municipality's ability to challenge decisions of its own board of zoning appeals by grafting a "directly affected" requirement for standing to the provisions of R.C. 2506.01. This language was taken from our prior decision in Schomaeker v. First Natl. Bank (1981), 66 Ohio St.2d 304, 20 O.O.3d 285, 421 N.E.2d 530. In

Schomaeker, a contiguous property owner challenged the village planning commission's grant of a use variance by seeking declaratory judgment relief in the court of common pleas. Id. at 305, 20 O.O. 3d at 286, 421 N.E.2d at 533. We held that such an action did not lie because the property owner had standing to bring a direct appeal pursuant to R.C. Chapter 2506. Id. at 310, 20 O.O.3d at 289, 421 N.E.2d at 536. In other words, since the property owner wa

s a person "directly affected" by the order of the planning commission, she possessed standing to seek review in the courts of common pleas. Id. at 312, 20 O.O.3d at 290, 421 N.E.2d at 537.

The "directly affected" language in Schomaeker merely serves to clarify the basis upon which a private property owner, as distinguished from the public at large, could challenge the board of zoning appeals' approval of the variance. The private litigant has standing to complain of harm which is unique to himself. In contrast, a private property owner across town, who seeks reversal of the granting of a variance because of its effect on the character of the city as a whole, would lack standing because his injury does not differ from that suffered by the community at large. The latter litigant would, therefore, be unable to demonstrate the necessary unique prejudice which resulted from the board's approval of the requested variance.

The case sub judice does not involve a particular landowner aggrieved by a board of zoning appeals' decision to grant a requested variance. Rather, it is the municipality itself which demands appellate review. Appellee Bar's Sahara's position is that it is only under the narrowest of circumstances that a municipality could be directly affected by a decision of its board of zoning appeals. According to appellee, an example of such limiting circumstance would be a variance permitting a noxious or heavy industrial use adjacent to property owned by a municipality, such as a park, which would directly affect the municipality, thereby entitling it to appeal the issuance of the variance. This interpretation of Schomaeker's "directly affected" language would deny the city appellate review of the board's determination unless the city could establish standing via the interests of a property owner.

We conclude that there is absolutely no reason to limit the municipality's standing through the use of a "directly affected" test and thereby preclude it from initiating an appeal under R.C. Chapter 2506. R.C. 2506.01 makes no mention of a "directly affected" requirement. Instead, the statute applies to "[e]very final order." It is doubtful that the General Assembly would have used the term "every" if it had intended to exclude orders adverse to municipalities. The broad language of R.C. 2506.01 necessitates the conclusion that municipalities do have legislative authority to appeal rulings of their own boards of zoning appeals.

Additionally, we recognize that there is nothing in R.C. 2506.01 that would limit the rights of a municipality, or treat it differently than any other party. As this court noted in Gold Coast Realty v. Bd. of Zoning Appeals (1971), 26 Ohio St.2d 37, 41, 55 O.O.2d 20, 23, 268 N.E.2d 280, 282:

"These sections [R.C. 2506.01 through 2506.04] set forth the procedure for appeals from administrative officers and agencies to the courts. A perusal of R.C. Chapter 2506 discloses nothing which would prohibit the city or commissioner of building from appealing adverse rulings of the Cleveland Board of Zoning Appeals, so long as such rulings are among those prescribed by R.C. 2506.01."2 (Emphasis added.)

In dismissing Willoughby Hills' administrative appeal, the court of common pleas, and later the court of appeals, relied primarily upon two cases. The first case is State, ex rel. Broadway

Petroleum Corp., v. Elyria (1969), 18 Ohio St.2d 23, 47 O.O.2d 149, 247 N.E.2d 471.  The second and more recent decision relied upon is Kasper v. Coury (1990), 51 Ohio St.3d 185, 555 N.E.2d 310. However, the court of appeals failed to observe that neither of these two cases prohibits Willoughby Hills from filing an administrative appeal.

In Broadway Petroleum, a relator, whose request for a building permit was granted by the board of zoning appeals, filed a petition in mandamus aga

inst the city of Elyria, its building inspector and its mayor ("respondents"), requiring them to comply with the board's determination that the permit be issued.3  The respondents challenged the writ of mandamus by appealing to the court of appeals, which reversed the order issuing the writ.  We concluded that the judgment of the court of appeals was in error because it "erroneously authorized an attack upon a decision that the Elyria Board of Zoning Appeals was authorized to make."  Id., 18 Ohio St.2d at 26, 47 O.O.2d at 151, 247 N.E.2d at 474.  Specifically, we held:

"*** [W]here legislation, including the city's charter and its ordinances, has specifically provided for the review by a city board of zoning appeals of the determination of its building inspector in refusing a building permit, neither the building inspector, the city nor its mayor may attack or avoid in judicial proceedings a decision of that board, except as authorized by legislation to do so."  (Emphasis added.)  Id. at 32, 47 O.O.2d at 154, 247 N.E.2d at 477.

In Kasper, this court revisited Broadway Petroleum and applied its holding to a situation, similar to the one in the case at bar, where a township zoning inspector's administrative appeal of a board of zoning appeals' decision to grant a variance was dismissed by the common pleas court for lack of standing. Essentially, the issue presented for our review in Kasper was "whether R.C. 519.24 provides a township zoning inspector or township board of trustees the right to appeal a decision of the board of zoning appeals to the court of common pleas."  Kasper, supra, at 186, 555 N.E.2d at 311.  We recognized that Broadway Petroleum created an exception which would permit the administrative official to seek appellate review as long as such right was legislatively authorized.  Id. at 187, 555 N.E.2d at 312.  In particular, Kasper focused its attention on interpreting whether R.C. 519.24 was the "legislation" referred to in Broadway Petroleum which authorized the township trustees to file an administrative appeal.  We concluded in Kasper at 188, 555 N.E.2d at 313, that R.C. 519.24 neither explicitly nor implicitly provided the necessary legislative authority to allow for an appeal of the board's decision and, as a consequence, the township trustees or zoning inspector did not have the authority to "attack" a decision of the board of zoning appeals.

Thus, Kasper is distinguishable from the instant appeal in that we are now faced with ascertaining the legal effect to be given to a municipality's charter.  Unlike Kasper, in the case sub judice we are presented with the Charter of the city of Willoughby Hills, which provides the requisite legislation to enable the city to appeal adverse rulings of its board of zoning appeals to the common pleas court.  Specifically, pursuant to Sections 3 and 7, Article XVIII of the Ohio Constitution, 4 Willoughby Hills adopted a home-rule charter which empowered the city to enact and enforce comprehensive zoning regulations independent of any statutory provisions which authorize municipal zoning.  In accordance with the authority set forth in Section 5.1 of the charter,5 Willoughby Hills promulgated a Master Plan and comprehensive zoning ordinances for the protection of its residents by providing for the development, physical character and future growth of the municipality.  The charter also

established a board of building and zoning appeals in Section 5.3, upon which was conferred exclusive authority within the municipality to grant exceptions to or variances from the zoning ordinances or building codes.  However, Section 5.33 of the charter specifically authorized Willoughby Hills to attack or avoid decisions of the board of building and zoning appeals, as follows:

"Finality of Decisions.  Decisions of

the Board of Building and Zoning Appeals shall be final within the Municipality, except that an appeal therefrom may be taken to any court of record in accordance with the laws of the State of Ohio, by any proper and interested party including the Municipality."  (Emphasis added.)

Accordingly, we hold that where a municipality's charter or its ordinances expressly allow the municipality to seek appellate review of determinations made by its board of zoning appeals, the municipality has standing pursuant to R.C. 2506.01 to "attack or avoid" such decisions in the common pleas court.  Alternatively, in the absence of a charter provision or ordinance which expressly provides for appellate review to the common pleas court, the municipality may only defend a decision of the board of zoning appeals on appeal to the common pleas court.  See Kasper, supra, at paragraph two of the syllabus.

As we have previously seen, a statutory or constitutional grant is necessary before a party can make use of the state court system.  See Roper, supra.  The Charter of the city of Willoughby Hills could not grant a right to such appellate review had the General Assembly not enacted R.C. Chapter 2506.  Absent R.C. 2506.01, the final order of the board of zoning appeals could not be reviewed by the common pleas court regardless of which party, the property owner or the municipality, was aggrieved.  However, in the instant case, we have determined the General Assembly by enacting R.C. 2506.01 provided a mechanism for appeals, thereby allowing the municipality to appeal under its own charter.  Section 5.33 of the Willoughby Hills Charter specifically authorized the city to avail itself of an R.C. Chapter 2506 administrative appeal in the common pleas court from the decision of its own board of building and zoning appeals.

We recognize that Section 5.33 demonstrates appellant's fundamental interest in protecting the integrity of its zoning ordinances.  Illegal variances undermine legitimate municipal objectives implemented by comprehensive zoning ordinances.  A decision by a board of zoning appeals which allows a variance to expand to an area greater than that which is otherwise permitted by zoning ordinances is, in effect, a legislative act done by a quasi-judicial body.  See Schomaeker, supra, at 312, 20 O.O.3d at 290, 421 N.E.2d at 537.  ("The decision of a planning commission granting a use variance is made in a judicial capacity, and the reasonableness of such decision is subject to appeal pursuant to R.C. 2506.01 and 2506.04.")  The purpose behind R.C. Chapter 2506 is to authorize judicial review of local quasi-judicial decisions that are "unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. ***"  R.C. 2506.04.  Allowing a municipal corporation standing to appeal to the common pleas court when its board of zoning appeals either exceeds its limited jurisdiction or misapplies the standards established for the granting of variances is certainly within the purview of R.C. 2506.01.

Accordingly, for the foregoing reasons, we reverse the judgment of the court of appeals and hold that where permitted by charter or ordinance, R.C. 2506.01 does not prohibit a municipality from seeking appellate review of an adverse decision of its board of zoning appeals.  The cause is remanded to the

trial court for further proceedings.

Judgment reversed
and cause remanded.

Moyer, C.J., Sweeney, Wright and Resnick, JJ., concur.

Douglas, J., concurs in judgment only.

H. Brown, J., dissents.

FOOTNOTES:

1  The syllabus in Roper provides:

"A resident, elector and property owner of a township, who appears before a township Board of Zoning Appeals, is represented by an attorney, opposes and p

rotests the changing of a zoned area from residential to commercial, and advises the board, on the record, that if the decision of the board is adverse to him he intends to appeal from the decision to a court, has a right of appeal to the Common Pleas Court if the appeal is properly and timely made pursuant to Sections 519.15 and 2506.01 to 2506.04, inclusive, and Chapter 2505, Revised Code."

2  The reference to "such rulings" in Gold Coast Realty is to final orders, adjudications, or decisions, which were defined in former R.C. 2506.01.  The statute now reads:

"A 'final order, adjudication, or decision' means an order, adjudication, or decision that determines rights, duties, privileges, benefits, or legal relationships of a person, but does not include any order, adjudication, or decision from which an appeal is granted by rule, ordinance, or statute to a higher administrative authority if a right to a hearing on such appeal is provided, or any order, adjudication, or decision that is issued preliminary to or as a result of a criminal proceeding."

3  The Broadway Petroleum opinion, 18 Ohio St.2d at 32, 47 O.O. 2d at 154, 247 N.E. 2d at 477, expressly reserved the question of whether R.C. Chapter 2506 authorizes an administrative official, or the city itself, to bring an appeal from an adverse determination of the ultimate administrative authority.

4  Section 3, Article XVIII, Ohio Constitution, provides:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws.  (Adopted September 3, 1912.)"

Section 7, Article XVIII, Ohio Constitution, provides::

"Any municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of section 3 of this article, exercise thereunder all powers of local self-government.  (Adopted September 3, 1912.)"

5  Section 5.13 of the Willoughby Hills Charter, entitled "The Master Plan," provides as follows:

"The Planning and Zoning Commission shall be responsible for the preservation and development of the physical character of the Municipality, and to that end, shall have the power and be required to make and to present to Council for their consideration, a Master Plan for the present needs and future growth and development of the Municipality.  Such Master Plan shall be comprised of existing ordinances and existing maps, a future land use plan, a public service plan, a street plan, and such other plans, maps, charts, and descriptive and explanatory matters as are necessary to show the Commission's recommendations for the most effective use of the Municipality's resources.

"The Commission shall make such investigations and inquiries as are necessary to complete this plan and may require information to be furnished by the Mayor or any office, department or agency of the Municipality.  The Commission may also, within its budget appropriation, contract for the occasional services of city planners and other consultants, as it may require.  The Commission shall promote public interest in and understanding of the Master Plan and of planning, zoning and urban renewal.

"The initial Master Plan shall be completed not later than January 1, 1972, and thereafter it shall be revised and amended or extended by the Commission as it deems necessary, providing that a complete review of the Plan takes place not less than once every five (5) years."