[Cite as *Alesi v. Warren Cty. Bd. of Commrs.*, 2014-Ohio-5192.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


| | | |
|---|---|---|
| DAN ALESI, et al., | : | |
| Appellants/Cross-Appellees, | : | CASE NOS. CA2013-12-123 |
| | | CA2013-12-124 |
| - vs - | : | CA2013-12-127 |
| | | CA2013-12-128 |
| BOARD OF COUNTY | : | CA2013-12-131 |
| COMMISSIONERS, WARREN | | CA2013-12-132 |
| COUNTY, OHIO, | : | |
| | | O P I N I O N |
| Appellee/Cross-Appellant, | : | 11/24/2014 |
| - vs - | : | |
| PILOT TRAVEL CENTERS, LLC, | : | |
| and | : | |
| THE SISTERS LTD., | : | |
| Appellees/Cross-Appellants. | : | |


APPEALS FROM WARREN COUNTY COURT OF COMMON PLEAS
Case Nos. 13CV83859 and 13CV83873


Timothy G. Mara, 1600 Scripps Center, 312 Walnut Street, Cincinnati, Ohio 45202, for appellants/cross-appellees, Dan Alesi, et al.

Timothy M. Burke, Kathleen Farro, and Manley Burke, LPA, 225 W. Court Street, Cincinnati, Ohio 45202, for appellees/cross-appellants, Pilot Travel Centers, LLC, and The Sisters Ltd.

David P. Fornshell and Bruce McGary, Civil Division – Office of Warren County Prosecutor, 406 Justice Drive, 3rd Floor, Lebanon, Ohio 45036, for appellee/cross-appellant, Board of County Commissioners, Warren County, Ohio.

DEWINE, J.

{¶ 1} These are consolidated appeals involving a proposed Pilot/Flying J truck stop to be built near the intersection of Interstate 71 and State Route 123 in Turtlecreek Township of Warren County.

{¶ 2} The Warren County Board of Commissioners approved the zoning application for the truck stop subject to certain conditions. On appeal, the Warren County Court of Common Pleas affirmed the approval of the zoning application but modified some of the conditions. The Board of Commissioners, Pilot and 58 residents have all appealed to this court. We hold that the common pleas court should have dismissed the appeal filed by the residents because Ohio law does not provide them with standing to appeal, and, as a consequence, the common pleas court was without jurisdiction to consider their appeal. We must dismiss the cross-appeal filed by the Board of Commissioners in this court because it does not challenge the judgment issued by the common pleas court.

{¶ 3} As to the appeal filed by Pilot, we affirm the lower court's decision in all but one respect. One of the conditions attached by the Board of Commissioners and upheld by the common pleas court was that Pilot submit an additional traffic-impact study to the Ohio Department of Transportation ("ODOT"). The number and type of traffic studies to be submitted to and considered by ODOT as part of ODOT's review process is something for ODOT to decide, not the Board of Commissioners. Thus, we conclude that the Board exceeded its authority in ordering the traffic-impact study. We affirm the judgment of the common pleas court in all other respects.

**The Proposed Travel Center**

{¶ 4} Pilot Travel Centers LLC operates truck stops across the country. It seeks to build and operate one of its "Flying J" truck stops on a 10.5-acre lot at the southeast quadrant of Interstate 71 and State Route 123 (the "Property"). The proposed travel center includes a Wendy's drive-through restaurant, a marketplace deli, 12 automobile fueling pumps, eight diesel-fueling lanes and overnight parking to accommodate semi-trucks and recreational vehicles ("RVs"). Pilot Travel Centers has agreed to purchase the Property from

its current owner, The Sisters Ltd., subject to zoning approval.

{¶ 5} The proposed truck stop is located in an unincorporated area of Turtlecreek Township in Warren County. The Warren County Board of County Commissioners ("BOCC") has adopted a zoning resolution, the Warren County Rural Zoning Code ("the Zoning Code" or "Code"), to regulate zoning in the Township. *See* R.C. 303.02.

{¶ 6} The Property is in an area zoned "Light Industrial Manufacturing" or "I-1." Truck stops are a permitted use in the "I-1" zone, but they are subject to "site plan review" by the BOCC. Under the site-plan-review process, the BOCC is to review "the site plan in the interests of public health and safety, as well as, public convenience, comfort, prosperity, or general welfare." Code Section 1.303.

{¶ 7} In September 2012, The Sisters Ltd. and Pilot (collectively referred to as "Pilot") filed a joint application with the Warren County Zoning Department for a site plan review. While the application was pending, the BOCC approved a Joint Economic Development District ("JEDD"), a zoning overlay district, within the Interstate 71/State Route 123 area that includes the Property.

{¶ 8} The BOCC held public hearings on Pilot's zoning application on November 15, 2012, and January 10, 2013. The BOCC considered testimony from the county's zoning inspector, representatives of Pilot, an employee of an engineering firm who had performed a "noise study" on behalf of Pilot, and a number of citizens who opposed the project. A report prepared by the Warren County Regional Planning Commission recommended approval of the site plan with certain conditions, including additional landscaping to increase the attractiveness of the Property and to obstruct the view from Interstate 71. The zoning inspector reported on comments that he had received from a number of public bodies, including the Turtlecreek Township Trustees, the Turtlecreek Township Fire Department and ODOT. The inspector testified that the impervious surface ratio of 0.724 percent provided for in Pilot's application would comply with the new requirements of the JEDD, but not with the

0.63-percent requirement in the I-1 zone in effect at the time of the application.[1]

{¶ 9} The citizens who spoke against the application expressed concerns that a truck stop would lead to increased pollution, noise, traffic and crime. James Kuschill testified and submitted voluminous reports and statistics he had collected regarding air quality and pollution generally caused by semi-trucks. Kuschill argued that the proposed travel center should include electrification in the parking area to prevent trucks from idling. Other citizens raised concerns regarding traffic impact on the local streets, and noted the proximity of nearby attractions, including YMCA Camp Kern and the Fort Ancient historical site.

{¶ 10} On February 23, 2013, the BOCC approved the application by a two-to-one vote, subject to 24 enumerated conditions (the "Resolution"). The additional conditions pertinent to these consolidated appeals are:

- Condition 9: requiring Pilot to comply with the maximum impervious surface ratio for the I-1 zone or seek approval for the less restrictive requirement in the JEDD from the JEDD board;

- Condition 11: requiring that Pilot provide an additional traffic-impact study to ODOT;

- Condition 13: requiring Pilot to provide landscaping beyond that required in the Zoning Code to block the view from Interstate 71; and

- Condition 23: requiring Pilot to provide electrification for all RV and semi-truck parking spaces in an effort to decrease vehicle idling.

{¶ 11} Pilot, as well as 78 citizens with postal addresses in Lebanon, Morrow and Oregonia, Ohio, appealed the BOCC's decision to the Warren County Court of Common Pleas. The lower court affirmed the BOCC's decision approving the application; however, the court struck or modified some of those enumerated conditions. The common pleas court affirmed Condition Nos. 9, 11, 13 and 23, over the objections of Pilot.

{¶ 12} Pilot, the BOCC and 58 of the citizens (the "Residents") all filed appeals to this

---

1. The impervious surface area is the ratio of manmade hard surfaces (such as roofs and paved parking and driveway areas) to the total lot size.

court.[2] The Residents challenged the common pleas court's reversal and amendment of some of the conditions of approval, as well as the approval of the site plan in general. Pilot challenged several of the conditions attached to the approval. The BOCC doesn't challenge the judgment of the common pleas court, but asks this court to correct dicta in the lower court's decision that it believes was erroneous.

**The Residents Lack Standing to Appeal under R.C. 2506.01**

{¶ 13} As an initial matter, we must address a jurisdictional issue with regard to the Residents' standing to appeal the BOCC's decision approving the Flying J.

{¶ 14} Standing requirements exist "to prevent the courts from being used to usurp the authority of the political branches." *See generally Clapper v. Amnesty Internatl. USA*, __ U.S.__, 133 S.Ct. 1138, 1146, 185 L.Ed.2d 264 (2013); *Hollingsworth v. Perry*, __ U.S.__, 133 S.Ct. 2652, 2661, 186 L.Ed.2d 768 (2013). They ensure that courts do not become a forum for generalized grievances, but instead limit resort to the judicial process to those who have suffered a particularized injury. "The requirement of standing is not designed to shield agencies and officials from accountability to taxpayers; instead, it denies the use of the courts to those who, while not sustaining a legal injury, nevertheless seek to air their grievances concerning the conduct of government. The doctrine of standing directs those persons to other forums." *Racing Guild of Ohio, Local 304, Serv. Emps. Internatl. Union, AFL-CIO, CLC v. Ohio State Racing Comm.*, 28 Ohio St.3d 317, 321, 503 N.E.2d 1025 (1986).

{¶ 15} Here, none of the parties has raised the issue of standing. Thus, we only need reach the issue if we determine that it affects our subject-matter jurisdiction to hear the Residents' appeal. As a general matter, standing and subject-matter jurisdiction are distinct concepts. *See Groveport Madison Local Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 137 Ohio St.3d 266, 273, 2013-Ohio-4627, 998 N.E.2d 1132, ¶ 25. "Subject-matter jurisdiction refers to the statutory or constitutional authority to adjudicate a case. Lack

---

2. The 58 citizens appealed the common pleas court's judgment in the cases numbered CA2013-12-0123 and CA2013-12-0124. Pilot appealed in the cases numbered CA2013-12-0127 and CA2013-12-0128, and the BOCC appealed in the cases numbered CA2013-12-0131 and CA2013-12-0132.

of standing, on the other hand, challenges a party's capacity to bring an action, not the subject-matter jurisdiction of the tribunal." *Id.*, citing *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, ¶ 11, and *State ex rel. Tubbs Jones v. Suster*, 84 Ohio St.3d 70, 77, 701 N.E.2d 1002 (1998); *see also Bank of Am., N.A. v. Kuchta*, Slip Opinion No. 2014-Ohio-4275, ¶ 22-23.

{¶ 16} But in the administrative-appeal context, there is no "inherent" right to appeal, "to the contrary it must be conferred by statute." *Midwest Fireworks Mfg. Co. v. Deerfield Twp. Bd. of Zoning Appeals*, 91 Ohio St.3d 174, 743 N.E.2d 894 (2001); *see Willoughby Hills v. C. C. Bar's Sahara, Inc.*, 64 Ohio St.3d 24, 26, 591 N.E.2d 1203 (1992), citing *Roper v. Bd. of Zoning Appeals*, 173 Ohio St. 168, 173, 180 N.E.2d 591 (1962). R.C. Chapter 2506 provides the authority for administrative appeals from political subdivisions. R.C. 2506.01 provides that "[e]very final order, adjudication, or decision of any * * * board * * * or other division of any political subdivision of the state may be reviewed by the court of common pleas * * *." R.C. 2506.01(A). "[F]inal order, adjudication, or decision" as used in R.C. 2506.01 "means an order, adjudication, or decision that determines rights, duties, privileges, benefits, or legal relationships of a person[.]" R.C. 2506.01(C). In addition, R.C. 307.56 provides that "[a] person aggrieved by the decision of the board of county commissioners may appeal to the court of common pleas, as provided by and under the authority of Chapter 2506 of the Revised Code." The Supreme Court has "construed R.C. Chapter 2506 to permit appeals only by those *directly affected* by the administrative decision." (Emphasis sic.) *In re Partition for Incorporation of the Village of Holiday City*, 70 Ohio St.3d 365, 371, 639 N.E.2d 42 (1994).

{¶ 17} Because one cannot appeal an administrative order absent statutory authority, the trial court has no jurisdiction to hear a case unless authority to appeal is granted by statute. Thus, standing in the context of an administrative appeal is a jurisdictional prerequisite that cannot be waived. *See Groveport* at ¶ 25; *Buckeye Foods v. Cuyahoga Cty. Bd. of Revision*, 78 Ohio St.3d 459, 678 N.E.2d 917 (1997); *Safest Neighborhood Assn. v. City of Athens Bd. of Zoning Appeals*, 2013-Ohio-5610, 5 N.E.3d 694, ¶ 10 (4th Dist.);

*Kurtock v. Cleveland Bd. of Zoning Appeals*, 8th Dist. Cuyahoga No. 100266, 2014-Ohio-1836, ¶ 10; *Alexis Entertainment, LLC v. City of Toledo*, 6th Dist. Lucas No. L-13-1028, 2013-Ohio-3946, ¶ 7. Because standing is jurisdictional in this case, we must confront the issue even though none of the parties have asked us to do so. If the Residents lacked standing to appeal the BOCC's decision, then the common pleas court lacked jurisdiction over their administrative appeal.

{¶ 18} "The burden of proof to establish standing lies with the party seeking to appeal and therefore that party must ensure that the record supports his or her claim of standing." *Safest Neighborhood* at ¶ 20; *Kurtock* at ¶ 10.

{¶ 19} In a series of cases, the Ohio Supreme Court has delineated standing requirements for third-party, private-property owners under R.C. 2506.01. *See Roper*, 173 Ohio St. at 173, 180 N.E.2d 591; *Schomaeker v. First Natl. Bank*, 66 Ohio St.2d 304, 421 N.E.2d 530 (1981); *Willoughby Hills*, 64 Ohio St.3d at 26, 591 N.E.2d 1203. Standing is not limited to the party who submitted the zoning application. *Roper*, 173 Ohio St. at 173, 180 N.E.2d 591. But for a third-party property owner to appeal under R.C. 2506.01, the property owner must at a minimum have been "directly affected" by a board's decision and must have "actively participated" in an administrative hearing. *Safest Neighborhood*, 2013-Ohio-5610, 5 N.E.3d 694, at ¶ 24; *Lupo v. City of Columbus, Bd. of Zoning Appeals*, 10th Dist. Franklin No. 13AP-1063, 2014-Ohio-2792, ¶ 29; *Kurtock*, 8th Dist. Cuyahoga No. 100266, 2014-Ohio-1836, at ¶ 10; *Groffre Invest. v. City of Canton Bd. of Zoning Appeals*, 2013-Ohio-1227, 989 N.E.2d 583 (5th Dist.).

{¶ 20} The "active-participation" element requires that the third party must have actively participated in an administrative hearing by attending the hearing personally, or through a representative, and voicing opposition to the proposed property use. *Safest Neighborhood*, 2013-Ohio-5610, 5 N.E.3d 694, at ¶ 25; *Groffre* at ¶ 26.

{¶ 21} The "directly-affected" requirement is met where the property owner shows some unique harm that is distinct from the harm suffered by the community at large. *Safest Neighborhood*, 2013-Ohio-5610, 5 N.E.3d 694, at ¶ 25; *Kurtock*, 8th Dist. Cuyahoga No.

100266, 2014-Ohio-1836, at ¶ 11-13, citing *Willoughby Hills*, 64 Ohio St.3d at 27, 591 N.E.2d 1203. The litigant must demonstrate some injury "which is unique to himself" as opposed to something that affects the "character" of the community. *Willoughby Hills*, 64 Ohio St.3d at 37, 591 N.E.2d 1203. In determining whether a property owner has suffered unique harm, courts look "'beyond physical proximity to determine if the order constitutes a determination of the rights, duties, privileges, benefits or legal relationships of a specified person.'" *Citizens Against Blasting on our Miami (CABOOM) v. Anderson Twp. Bd. of Zoning Appeals*, 1st Dist. Hamilton Nos. C-120011, C-120012, C-120013, C-120014 and C-120015, 2012-Ohio-6145, quoting *Jenkins v. Gallipolis*, 128 Ohio App.3d 376, 382, 715 N.E.2d 196 (4th Dist.1998).

{¶ 22} As to the active-participation requirement, although a few of the Residents testified before the BOCC at the hearings, most did not. After the close of the BOCC hearings, but before the BOCC's decision on the matter, the BOCC allowed anyone who had testified at the hearings to submit written arguments for or against the proposed travel center. An attorney on behalf of a group of citizens, which included citizens who had not testified at the hearings, filed a brief opposing approval of Pilot's application. Several of the Residents in the instant appeals failed to join the post-hearings brief and failed to testify at the BOCC hearings. Consequently, at least a portion of the Residents did not actively participate at the hearings. *See Safest Neighborhood*, 2013-Ohio-5610, 5 N.E.3d 694, at ¶ 25; *Groffre*, 2013-Ohio-1227, 989 N.E.2d 583. But we need not linger on the active-participation requirement because the unique-harm requirement is dispositive of the Residents' appeal.

{¶ 23} None of the Residents who testified at the BOCC hearings or who joined the post-hearings brief indicated how he or she might be uniquely harmed by the proposed travel center. The testimony and briefing all dealt with harms to the community at large. Nowhere did any of the Residents identify any unique harm that he or she would suffer. The BOCC's decision did not determine the legal rights and privileges of any of the Residents. *See Schomaeker*, 66 Ohio St.2d at 312, 421 N.E.2d 530. In addition, the site-plan-review process in the Zoning Code requires that an applicant provide a list of all property owners within 500 feet of the subject property, but none of the Residents were listed by Pilot as falling within

this 500-foot boundary.  *See* Code Section 1.303.3(B)(9).

{¶ 24}  There is simply nothing in the record to even suggest that any of the Residents will suffer any grievance different than what other residents of the community might suffer. Rather, the record evidence demonstrates that the complaints voiced by the Residents consisted of generalized fears as to the impact of the truck stop on the community as a whole.

{¶ 25} Because none of the Residents meet the unique-harm requirement, the Residents lack standing under R.C. 2506.01.  The lower court should have dismissed their appeal.

### Pilot's Appeal of the Resolution Conditions

{¶ 26}  We now turn to the cross-appeal filed by Pilot objecting to the common pleas court's affirmance of certain conditions in the BOCC's Resolution.

{¶ 27}  The Supreme Court has cautioned that we perform "a limited function" when we review the decision of the common pleas court in appeals such as this one.  *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34, 465 N.E.2d 848 (1984).  The standard of review applied by a trial court in review of a decision of an administrative body is whether the decision is "unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record."  R.C. 2506.04.  While the common pleas court may weigh the evidence, our review is more limited. *See id.*; *Key-Ads, Inc. v. Bd. of Cty. Comm., Warren Cty., Ohio*, 12th Dist. Warren No. CA2007-06-085, 2008-Ohio-1474, ¶ 8.  R.C. 2506.04 allows an appellate court "to review the judgment of the common pleas court only on 'questions of law,' which does not include the same extensive power to weigh 'the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court."  *Kisil* at 34, n. 4, quoting R.C. 2506.04. But, "[w]ithin the ambit of 'questions of law' for appellate court review would be abuse of discretion by the common pleas court."  *Id.*, quoting R.C. 2506.04.  Thus, to put it simply, we may only reverse if we find that either (1) the trial court abused its discretion in its determination as to whether the BOCC decision was supported by the preponderance of the

evidence, or (2) that the trial court committed an error of law.

{¶ 28} With this standard of review in mind, we now turn to Pilot's assignments of error.

### Impervious Surface Ratio

{¶ 29} In its first assignment of error, Pilot argues that the common pleas court erred in upholding Condition No. 9 of the Resolution requiring Pilot to comply with the maximum impervious surface ratio in an I-1 district of 0.63, or to seek approval for a greater percentage from the JEDD Advisory Board. Pilot argues that because the proposed travel center now falls within the JEDD, the BOCC should have approved its application providing for a 0.724 ratio because the JEDD allows for a maximum impervious ratio of 0.8. *See* Code Section 2.611.4(D).

{¶ 30} The zoning regulations in effect at the time an applicant files for a zoning certificate are controlling. *See Laderman & Weiss Realty Co. v. Beachwood*, 27 Ohio St.2d 150, 153, 271 N.E.2d 844 (1971). Nevertheless, Pilot argues that it need not comply with the impervious surface ratio set forth in the Zoning Code because the Warren County zoning inspector had told them that compliance with the less restrictive ratio in the JEDD would be sufficient. Pilot, however, cannot rely on the zoning inspector's erroneous interpretation of zoning law in seeking to avoid compliance with the zoning ordinance in effect at the time of the application. *See, e.g.*, *Palmer v. Gray*, 12th Dist. Warren No. CA2011-04-034, 2011-Ohio-6796, ¶ 18 (promissory and equitable estoppel do not apply to a political subdivision engaged in a governmental function).

{¶ 31} Pilot also argues that an applicant in a zoning case can take advantage of a zoning amendment after submittal of its application, but before its approval under the "vested rights doctrine." The vested rights doctrine deals with the retroactive application of a zoning regulation to take away vested property rights. *See Gibson v. Oberlin*, 171 Ohio St. 1, 167 N.E.2d 651 (1960); *Torok v. Jones*, 5 Ohio St.3d 31, 448 N.E.2d 819 (1983). Here, the JEDD was not in place at the time that Pilot filed its zoning application, so it has no vested right in the application of the JEDD. Moreover, the JEDD specifically prohibits truck stops.

*See* Code Section 2.611.3(A).  Pilot can hardly complain that it should be able to "cherry pick" regulations from the JEDD with which it wishes to comply when it has no desire to have its entire application considered under the JEDD rules.

{¶ 32} The common pleas court did not err in refusing to strike Condition No. 9.  We overrule Pilot's first assignment of error.

Traffic-impact Study

{¶ 33} In its second assignment of error, Pilot argues that the common pleas court erred in upholding Condition No. 11, requiring them to submit an additional traffic-impact study to ODOT.

{¶ 34} Code Sections 1.303.1(H) and 1.303.6(K) require a board of county commissioners conducting a site plan review to ensure that a site plan application complies with applicable state regulations and to determine the impact on public roadways.  As a result, ODOT had been consulted with regard to the proposed travel center, and the evidence in the record indicated that a traffic-impact study had been completed to ODOT's satisfaction.  Although the traffic-impact study approved by ODOT was not part of the administrative record, the record reflected that ODOT would approve Pilot's permit once Pilot made ODOT's recommended changes, including widening State Route 350 and altering the entrances to the Property.  Despite ODOT's approval, citizens at the BOCC hearing voiced their concerns regarding the traffic impact on state roads, as well as the impact on county roads by drivers attempting to bypass the truck stop.

{¶ 35} Pilot argues that the BOCC lacked authority to order it to complete an additional traffic-impact study to ODOT.  We agree.  Although the Zoning Code allows the BOCC to determine the impact of a proposed site plan on local roadways, the BOCC exceeded its authority by requiring Pilot to submit another traffic-impact study to ODOT—a state entity over which it has no control.  *See* R.C. 5535.01 and 5535.08; *Messer v. Butler Cty. Bd. of Commrs.*, 12th Dist. Butler Nos. CA2008-12-290 and CA2009-01-004, 2009-Ohio-4462, ¶ 13 (state highways are within the exclusive jurisdiction of ODOT).  It is for ODOT, not the BOCC, to determine what traffic studies are pertinent to its permit-review process.

{¶ 36} Therefore, we sustain Pilot's second assignment of error as to Condition No. 11.

<u>Additional Landscaping</u>

{¶ 37} Pilot's third assignment of error challenges the additional landscaping requirements imposed by the BOCC in Condition No. 13. Pilot argues that the common pleas court erred in concluding that the BOCC had the authority to impose additional landscaping requirements beyond those specifically provided for in the Zoning Code.

{¶ 38} The Zoning Code provides minimum standards for landscaping, the purpose of which includes aesthetics and buffering. *See* Zoning Code, Art. 3, Ch. 4. The Code provides different standards depending on the use, and the most stringent buffer requirement, defined as "Buffer Type D," applies to proposed industrial uses abutting residential uses. The Property at issue abuts other commercial- and industrial-use areas.

{¶ 39} Pilot appeals the following subparts of Condition No. 13, requiring them to install

> c) additional landscaping along the northern side of the Truck, Trailer & RV parking area that satisfies twice the landscaping requirements of Buffer Type D, to screen the view of Interstate 71; d) additional landscaping along the eastern boundary consisting of one deciduous and one evergreen tree spaced every ten lineal fee (10 ft.) to screen the abutting property on the east side of the detention basin * * *; and, e) landscaping along the southern portion of the Truck, Trailer & RV parking area shall satisfy the landscaping requirements of Buffer Type D and is installed and maintained in a manner where shrubs do not exceed three feet (3 ft.) in height and the base of the tree canopies is greater than seven feet (7 ft.).

{¶ 40} Pilot argues that its application complies with the landscaping requirements set forth in the Zoning Code, and that these additional landscaping requirements go beyond the BOCC's authority. We disagree. Section 1.303.6(H) provides that a site plan should be "[e]valuated based on the design and effectiveness of the landscaping/building material to screen and mitigate negative visual impacts **and** for compliance with Article 3, Chapter 4 Landscaping and Screening Requirements." (Emphasis added.) The use of the conjunctive "and" makes clear that the BOCC's authority to evaluate the landscaping elements of a site

plan extends beyond ensuring compliance with the requirements in Article 3, Chapter 4 of the Code. Therefore, the common pleas court did not commit legal error in determining that the BOCC had the authority to impose more stringent landscaping requirements than those enumerated in the Code.

{¶ 41} Pilot also argues that R.C. 303.02 allows a board of county commissioners to establish "reasonable landscaping standards * * * in the unincorporated territory of the county[,]" and that the BOCC acted unreasonably here in imposing more stringent landscaping requirements than would apply to industrial uses abutting residential uses. But the additional requirements were supported by the evidence at the public hearings, and the BOCC acted reasonably in requiring additional landscaping to preserve the area as a gateway to the community. We cannot say that the common pleas court abused its discretion in reaching its determination.

{¶ 42} We overrule Pilot's third assignment of error.

<u>Electrification</u>

{¶ 43} In its fourth assignment of error, Pilot argues that the lower court erred in concluding that substantial, reliable and probative evidence existed in the record to support Condition No. 23, requiring electrification of the entire RV and semi-truck parking areas.

{¶ 44} Pilot contends that the evidence of pollution caused by semi-truck idling, which formed the basis of the electrification condition, came from a layperson, Kuschill, and that environmental protection falls outside the BOCC's purview. Under the Zoning Code, in a site plan review the BOCC is to evaluate a proposed use for impact on the public health, safety and wellness, and ensure that the proposed use contains a plan to mitigate nuisances. *See* Code Section 1.303.6(P).

{¶ 45} Pilot concedes that it agreed to electrify the parking areas at the BOCC hearings. But it argues that the condition imposed—electrification of the entire parking area—was more onerous than what it agreed to. The problem is that Pilot has not submitted any evidence of the condition to which it concedes it agreed. The record reflects that a Pilot representative agreed to comply with proposed "condition 18" regarding electrification of the

parking area; however, the substance of "condition 18" never appeared in the BOCC record. Moreover, the record was not supplemented before the common pleas court to explain this deficiency.

{¶ 46} As the party appealing the common pleas court's judgment, Pilot has the burden to demonstrate that the lower court abused its discretion as a matter of law in affirming the BOCC's electrification condition. *See* R.C. 2506.04; *Key-Ads, Inc.*, 12th Dist. Warren No. CA2007-06-085, 2008-Ohio-1474, at ¶ 8. Here, the record is unequivocal that Pilot agreed to provide electrification, and Pilot has failed to set forth evidence that the condition imposed by the BOCC was any different than what it agreed to provide. Pilot has failed to meet its burden to demonstrate that the common pleas court abused its discretion in upholding the electrification requirement in Condition No. 23.

{¶ 47} Therefore, we overrule the fourth assignment of error.

**BOCC Lacks Standing to Appeal the Common Pleas Court's Judgment**

{¶ 48} The BOCC's sole assignment of error challenges the legal reasoning of the common pleas court's decision.

{¶ 49} Ohio law allows a board of county commissioners to regulate land use in unincorporated areas "in accordance with a comprehensive plan." R.C. 303.02. A "Warren County Comprehensive Plan Land Use Map" was made part of the BOCC record. The BOCC and Pilot took the position that pursuant to Warren County's zoning regulations this "comprehensive plan" was only a suggestion. The common pleas court, applying R.C. 303.02, concluded that compliance with the plan was mandatory, but that the proposed use did in fact comply with the comprehensive plan.

{¶ 50} The BOCC's appeal is limited to its disagreement with the common pleas court's statement about the mandatory nature of the comprehensive plan. Specifically, it states the "BOCC cross-appeal[s] only the Trial Court's comments, albeit dicta, of the mandatory effect of the [Warren County] 'Comprehensive Plan,' as the Trial Court's comments may impact this case, plus have a broad impact on future cases."

{¶ 51} In order for a party to have standing to appeal, that party must have been

aggrieved or prejudiced by the order appealed. *Ohio Contract Carriers Assn., Inc. v. Public Util. Comm. of Ohio*, 140 Ohio St. 160, 42 N.E.2d 758 (1942), syllabus; *Ohio Savs. Bank v. Ambrose*, 56 Ohio St.3d 53, 55, 563 N.E.2d 1388 (1990), fn.3. It is the order or the judgment itself that must cause prejudice for a party to have standing to appeal. "Adverse dicta are not appealable rulings." *Chathas v. Local 134 IBEW*, 233 F.3d 508, 512 (7th Cir.2000). "Judgments are appealable; opinions are not." *Id.*

{¶ 52} The BOCC concededly tries to appeal only from dicta. It fails to identify any interest adversely affected by the common pleas court's judgment. Thus, we must dismiss the BOCC's appeals for lack of standing.

### Conclusion

{¶ 53} We sustain Pilot's second assignment of error as to the additional traffic-impact study required in Condition No. 11 of the BOCC's Resolution, and pursuant to App.R. 12, we modify the common pleas court's judgment to reflect that Condition No. 11 is stricken from the Resolution. We further modify the lower court's judgment to reflect the dismissal of the Residents' appeal for lack of standing. The BOCC's appeals to this court are dismissed for lack of standing. The common pleas court's judgment is affirmed as modified.

{¶ 54} Judgment affirmed as modified, and appeals dismissed in the cases numbered CA2013-12-131 and CA2013-12-132.


HENDON and DINKELACKER, JJ., concur.



Hendon, P.J., of the First Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 5(A)(3), Article IV of the Ohio Constitution.

Dinkelacker, J., of the First Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 5(A)(3), Article IV of the Ohio Constitution.

DeWine, J., of the First Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 5(A)(3), Article IV of the Ohio Constitution.